(103 So. 334)

No. 24803.

FREEMAN & FREEMAN v. TORRE REAL-
TY & IMPROVEMENT CO.

(March 2, 1925.)

*(Syllabus by Editorial Staff.)*

1. Brokers ⊂⊃49(1)—Broker must discharge whole duty intrusted to him to be entitled to commission.

Broker must discharge whole service or duty intrusted to him to be entitled to a commission.

2. Brokers ⊂⊃63(1)—Broker entitled to commission, if performance of duty prevented by employer.

If performance of duty intrusted to broker is prevented by employer, he is nevertheless entitled to his commission.

3. Brokers ⊂⊃53—Broker entitled to commission, when he is procuring cause of sale or lease.

Broker is entitled to his commission, when he is procuring cause of sale or lease.

4. Brokers ⊂⊃55(2)—Not entitled to commissions for obtaining tenant making acceptable offer through another broker.

Brokers were not entitled to commissions for obtaining tenant for defendant's building, listed with several brokers, where they obtained no offer from tenant, on terms prescribed by defendant, who leased to tenant with whom brokers had been negotiating when it made a better offer through another broker.

5. Brokers ⊂⊃55(1)—Not entitled to commission, because efforts indirectly brought tenant to terms prescribed by defendant.

That efforts made by brokers indirectly influenced bringing of tenant to terms prescribed by defendant for leasing of its building did not entitle brokers to commission, when lease was actually obtained by other brokers.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by Freeman & Freeman against the Torre Realty & Improvement Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Merrick & Schwarz, of New Orleans, for appellant.

U. Marinoni, Jr., and Michel Provosty, both of New Orleans, for appellee.

OVERTON, J. Defendant is the owner of a four-story brick building, situated on Carondelet street, in this city, known as Gallier Court. In the early part of 1919, the first floor of the building was occupied by tenants, one of these being the Metairie Ridge Nursery Company. One-half of the second floor was also leased, but the rest of the building was vacant, and had been vacant for some time. The tenants in the building, with the exception of the Metairie Ridge Nursery Company, had been procured, or mostly so, by plaintiffs.

The leases to the parts of the premises rented were about to expire, and defendant was naturally desirous of renting the entire building. The building was in need of substantial repairs, and, for that reason, apparently, all of it had not been rented. Defendant did not care to make the repairs itself, if it could avoid doing so. Its plan was to lease the entire building to one tenant, and have the tenant, as part fulfillment of the contract, make the repairs required. Defendant did not list the property with any particular agent, but spoke to several real estate agents relative to the leasing of the building, and informed each of them, including plaintiffs, of the manner in which it desired to lease the property.

Plaintiffs, being among those who knew that the building was for rent, made an effort to lease it for defendant. They spoke, among others, to Francois Sartre, the proprietor of a restaurant, and to the auditor and the president of the Metairie Ridge Nursery Company, whose company, as we have seen, was already occupying a part of the premises. The conversations had with Sartre did not materialize into anything, though they apparently influenced the bring-

157 LOUISIANA REPORTS ·

ing about of the situation which resulted in this litigation. The conversations had with the officers of the Metairie Ridge Nursery Company resulted in plaintiffs obtaining an offer from the president of the company to lease the building in behalf of his company for $7,000 a year for a period of 10 years, the owner to make all repairs necessary. This offer was submitted to defendant, and was refused. Plaintiffs then took the matter up again with the president of the Metairie Ridge Nursery Company, and the president of that company made another offer to lease the building for $8,000 a year for the first 5 years and $9,000 ·a year· for the second 5 years, the owner to make the necessary repairs. This offer was not accepted by defendant. Plaintiffs then suggested to defendant's president that they thought he could get more rental by dividing the building into two parts, renting one-half of it to the Metairie Ridge Nursery Company and the other half to some other tenant. This suggestion was apparently taken under advisement, and plaintiffs, ·in the meantime, evidently feeling that they could rent one-half of the building to the Metairie Ridge Nursery Company, undertook to get a tenant for the other half of it, and thought that they had interested the proprietor of a book store in the other half, but no agreement was reached, because defendant's president saw that he would have, not only to put the building in repair, but to make certain material changes in it, and concluded that, before any rental could be fixed, it would be necessary to obtain an estimate of those repairs and alterations. Therefore plaintiffs were asked to wait for a day or two. During this delay the auditor of the Metairie Ridge Nursery Company saw a member of plaintiffs' firm in close conversation with a person whom he thought was trying to procure a lease for Francois Sartre, and, fearing that unless some action was taken at once the company might lose the building, informed the company's president of his fears and their cause. After having been so informed, the president of the company went to the real estate office of C. A. Tessier & Son, and in conversation with one of the members of that firm told him of his company's desire to rent the building. This firm then took the matter up with defendant, and notified it of the offer it had received, without disclosing the name of the company that made the offer, and told defendant that if it were given a little time that it could bring back an offer which defendant could accept. The time was granted, and in a short while a member of the firm returned, and submitted to defendant an offer from the Metairie Ridge Nursery Company to lease the entire building for a period of 10 years at a rental of $7,500 a year, the Metairie Ridge Nursery Company to make all repairs and alterations necessary at its own expense, except those that the offer terms "structural changes," and defines to be the rebuilding of the foundation, walls, and other portions of the building, which, should it become necessary to rebuild, the offer makes it obligatory on the owner to rebuild. This offer was accepted, and defendant bound itself to pay Tessier & Son the usual commission of 4 per cent. on the total amount of the rentals for procuring the lease. In a day or two after plaintiffs last saw defendant relative to the leasing of the property, they returned to ascertain whether defendant intended to divide the building into two parts and lease to two tenants. Upon their return, defendant informed them that it had leased the property, and upon inquiry they ascertained that the lease had been made to the Metairie Ridge Nursery Company. Plaintiffs concluded that they were entitled to a commission for leasing the property, and, as defendant refused to pay them, they instituted the present suit to recover it.

[1-3] In order to entitle a broker to a commission, it must appear that he has discharged the whole service or duty intrusted to him. However, if the performance of the duty is prevented by the act of the one employing the services of the broker, as for instance, by wrongfully taking the property out of his hands, or by wrongfully interfering with his efforts, and, as a result, the sale or lease is effected by or through others, the agent is nevertheless entitled to his commission. Gottschalk v. Jennings, 1 La. Ann. 5, 45 Am. Dec. 70. A broker is said to be entitled to his commission when it appears that he is the procuring cause of the sale or lease. Taylor v. Martin, 109 La. 137, 33 So. 112. "An owner of land may place it in the hands of as many brokers as he sees fit, as long as no exclusive agency is given; and where several brokers are employed to effect the same transaction, such as a sale or exchange of property, the broker who first produces a customer and is the procuring cause of the sale, exchange, or other transaction is entitled to the commission, to the exclusion of the other brokers. It is the duty of the principal to remain neutral between them and not to interfere in favor of one broker, although, if he does remain neutral, he may sell to a customer produced by any one of them without being called on to decide which one was the moving cause of the sale. * * *" 9 C. J. p. 616, § 98.

[4, 5] In the case at bar, defendant desired to lease the building on a basis of 6 per cent. of its value, or for $7,800 a year, the tenant to make all repairs and alterations necessary. This information defendant imparted to all of the brokers to whom it spoke concerning the matter, listing the property with no particular one. Its intention was manifestly to pay the commission to whichever broker obtained a tenant upon terms satisfactory to it, and this, we take it, was understood by all of them. Plaintiffs obtained no such offer. The only offers obtained by them imposed upon the owner the obligation of making all repairs and alterations necessary. Under the terms proposed by defendant, it was not called upon to accept those offers, for they were not in accord with the terms proposed by it. Defendant had done nothing to interfere with the leasing of the building by plaintiffs on the terms proposed by it, nor had it interfered in favor of Tessier & Son. Therefore, when Tessier & Son submitted an offer which more nearly approached the terms upon which defendant desired to lease than any other that had been submitted, there was no reason why defendant should not have accepted it, and have paid Tessier & Son, who had obtained the offer, the commission. Because the efforts made by plaintiffs indirectly influenced the bringing of the Metairie Ridge Nursery Company to terms does not entitle plaintiffs to the commission, when, as a matter of fact, the lease was obtained by other brokers. Lewis v. Manson, 132 La. 817, 61 So. 835. It is true that the offer made by the Metairie Ridge Nursery Company came at a time when defendant had under advisement the question as to whether it would divide the building into two parts, and lease to two tenants. However, that fact did not prevent plaintiffs from obtaining a lease from one person or firm to the entire building, for, as we appreciate the evidence, the real reason why defendant had that question under advisement was because up to that time no satisfactory proposition had been submitted by any one to take the entire building.

Therefore, finding no error in the judgment appealed from, it is affirmed at appellants' cost.