## GAMBLIN v. YOUNG.

### No. 5836.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Foster, Hall, Barret & Smith, of Shreveport, for appellant.

Edward Barnett, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff is a realtor in the city of Shreveport. He sues to recover the sum of $887.-50, the amount of commission alleged to be due him on a sale by defendant to E. O. Heath of a building and lot on Wilder Place, in the said city, for the price of $25,500. He alleges that defendant authorized him to find a purchaser for the property and agreed to pay him the customary amount of commission if a sale should be consummated by or through his efforts. He further alleges that the sale was made as a direct result of his efforts in bringing defendant and Heath in contact and in interesting Heath in the property; and by informing defendant that Heath was a likely prospect for the purchase of the property.

Defendant admits that he authorized plaintiff to list the property for sale (which was before the foundation had been laid), but gave him no exclusive right in that respect, and agreed to pay him a commission should a sale be consummated through his efforts; but he denies that plaintiff earned any commission for the reason that the sale to Heath was effected by defendant himself several months after the plaintiff had abandoned his efforts to interest him therein; that the minor activity of plaintiff and his contacts with Heath contributed to no material extent toward the sale in question or Heath's decision finally to purchase it.

Plaintiff's demands were rejected and he has appealed.

The facts of the case are in the main not seriously disputed.

In the latter part of October, 1937, Mr. E. O. Heath and wife, who had recently established their residence in Shreveport, while driving over the city in search of a desirable house to rent, observed plaintiff's rent advertisement on a house on Unadilla Street which they thought might suit them. After returning to their apartment, Mrs. Heath phoned plaintiff and discussed the place and others he had for rent. After some delay, perhaps a day or two, plaintiff was able to get in touch with Mr. Heath and they drove to the residence on Unadilla, but learned on arriving that it had previously been rented. With a view of interesting Heath in the purchase of the new residence defendant was then beginning to erect on Wilder Place, he insisted that Heath go with him to the place and discuss the building, plans, etc., with defendant. He was there introduced by plaintiff to defendant. The foundation was then being poured.

In order to convince Heath of the excellent quality of residences defendant was building for sale, plaintiff carried him to a fine residence which defendant had just completed on Wilder Place and had sold to Mr. E. F. Neely, Heath's associate in the oil business. However, Heath could not be interested in purchasing a home for the reason that his stay in Shreveport was believed to be indefinite. Plaintiff tried to sell or rent him another residence owned by defendant on College Street which he had acquired from Neely, but this place was finally dismissed from consideration by Heath. He definitely informed plaintiff that he did not desire to purchase at all, but was very anxious to rent a satisfactory residence at once for himself and family. Plaintiff was unable to satisfy him in this respect. He rented a residence on Fairfield Avenue, presumably through another realtor, and moved into it on November 1st. Thereafter, he had no further contact or dealings with the plaintiff.

Plaintiff was not the first one to acquaint Heath with the fact that defendant was a builder of fine homes for sale, and had the residence for sale on College. Prior to meeting plaintiff, Heath was told by Neely of the College Street place and suggested to him that if he did not decide to purchase it, possibly he could arrange with defendant to erect him a home on Wilder Place, adding that he would like to have him (Heath) as a neighbor.

As work progressed on the Wilder Place residence, it attracted Mrs. Heath's attention. She quite often stopped by and viewed it. At times defendant was there and at others he was absent. She called defendant on the phone on a Sunday and had him meet her and her husband at the place that afternoon. He did not urge her to become interested as a prospective purchaser, but her interest appreciably increased from then on. Heath continued to maintain the position that he did not wish to purchase a home, but, during March, after the house had been completed for some ten days, largely through the influence and importuning of his wife, he decided to buy the property and the sale was closed. The price paid was about $2,000 less than plaintiff had been authorized to sell it for. Heath is positive that plaintiff's contact with him originally contributed to no extent toward his decision to buy.

Plaintiff admits that he made no effort to sell the property to Heath after he learned in November that he had rented a place on Fairfield Avenue for one year, but adds that he was waiting for the residence to reach completion before again approaching Heath about purchasing it. He did not think it was necessary that he persist in his efforts to interest him in the property.

It appears from the foregoing resume of the facts pertinent to the issue herein that: (1) Heath knew of defendant as a reputable builder of fine homes and knew he had begun to erect the residence in question prior to plaintiff's contact with him; (2) that after plaintiff learned that Heath was not in the market for a home and had leased a place on Fairfield Avenue for one year, he had no further dealings with him; (3) that plaintiff was authorized to sell the place for $27,500 and offered it to Heath for that price, which was $2,000 more than he was able to purchase it for from defendant himself; and (4) that Heath's decision to purchase was not influenced to any extent by his initial dealings with plaintiff.

In view of these established facts, it is clear that plaintiff did not earn the commission sued for. For a broker to earn an agreed commission on a sale of real estate, he must be the procuring cause thereof; he must have brought the parties together on common terms. And where a broker, as here appears, has been unsuccessful in his efforts to effect a sale, the owner himself may take up negotiations with the prospective purchaser and pursue them to consummation of sale, without exposing himself to liability for a broker's commission. These principles are well established in this state.

In Bullis & Thomas v. Calvert et al., 162 La. 378, 110 So. 621, 623, it was held: "On the other hand, this court has with equal consistency always held that, where a broker has failed to effect a sale, and negotiations have ceased or been broken off, the owner may take up the negotiations where they were left off and himself complete the sale, and the mere fact that the sale may in some degree have been aided by the previous efforts of the broker does not of itself entitle the latter to a commission; i. e., unless it clearly appear that those efforts were in fact the procuring cause of the sale. Lewis v. Manson, 132 La. 817, 61 So. 835, and authorities there cited; Freeman v. Torre, 157 La. 1093, 103 So. 334."

And in Freeman & Freeman v. Torre Realty & Improvement Company, 157 La. 1093, 103 So. 334, the court held: "That efforts made by brokers indirectly influenced bringing of tenant to terms prescribed by defendant for leasing of its building did not entitle brokers to commission, when lease was actually obtained by other brokers." See also Lewis v. Manson, 132 La. 817, 61 So. 835.

The judgment appealed from is correct; it is hereby affirmed, with costs.