We have not in any way altered our views as to the interpretation which should be placed on the letter of April 3, 1929, written to Mr. Ramsey by Mr. Cave, as Vice-President of defendant corporation. We are convinced that when he wrote that letter, Mr. Cave merely meant to recognize the fact that Mr. Ramsey had first introduced the New Orleans Refining Company as a prospect and to assure him that if that corporation should buy the property through some other agent, Ramsey's right to the commission would be protected.
If that is the correct meaning to be accorded to that letter then plaintiff did not have an exclusive contract, and, in order to recover, must show either that the sale was made to that prospect within a reasonable time, or, if made to any other purchaser, that he was the procuring cause of the sale. Therefore, since the sale was made not to New Orleans Refining Company but to Shell Petroleum Corporation, plaintiff cannot recover unless it appears either that he was the procuring cause of *Page 257 
the sale to the Shell Corporation or that that corporation was so closely identified with New Orleans Refining Company and the intercorporate relationship between those two companies was so universally known that the defendant corporation, and particularly Mr. Cave, ought to have known of it and ought to have realized that because of the letter of April 3d, a sale of the property to the Shell Corporation would entitle Ramsey to the commission.
In our original opinion, 8 So.2d 759, 760, we found that the record did not show that Mr. Cave knew of this relationship or that it was so universally recognized that he ought to have known it, and on that we have not changed our view.
Counsel for plaintiff have pointed out two errors of fact appearing in our original opinion. We stated that the negotiations between Mr. Cave and Mr. Ramsey looking to the sale of the property to defendant company had been initiated by Cave who "mentioned to Ramsey that his company would like to dispose of a portion of its real estate holdings on Carrollton Avenue." The fact seems to be that Ramsey, during the course of a golf game, first mentioned to Mr. Cave that he was looking for property for a prospective purchaser, and that it was in response to this statement that Mr. Cave suggested that his company might sell its property. We attach no importance to this difference.
The other error of which counsel for plaintiff complain is that we stated that when Mr. Ray Loker first called on Mr. Cave there were present two representatives of the Shell Petroleum Corporation. The record shows that at the first conference no one was present but Mr. Loker and Mr. Cave, and that at the second conference there were two gentlemen "from Atlanta" who, we erroneously believed, were representatives of Shell Corporation but who, it now develops, were representatives of the defendant company. We attach no significance to this error.
We have considered carefully the contention that because of the positive statements of Ramsey that it was the Shell Corporation with which he was negotiating and that throughout all of the discussions with Mr. Cave he had this corporation in mind, we should hold that Mr. Cave should have known that Mr. Ramsey was dealing with the Shell Corporation. But the record does not convince us that after April 3d Mr. Ramsey did discuss with Mr. Cave any progress which was being made in the negotiations, and particularly it does not convince us that he mentioned to Mr. Cave that the Shell Corporation was the prospect with which he was negotiating. Mr. Cave has no recollection of any such discussions, and Mr. Harry, then the President of the defendant company, says that he has no recollection either that Mr. Ramsey ever mentioned the subject to him.
There is other significant testimony concerning the question of whether there were any subsequent negotiations between Mr. Ramsey and the Shell Corporation. This comes from Mr. T.M. DeVeney who, according to Mr. Ramsey, "was the real estate man in charge of operations for the Shell people." It is certain that if subsequent to April 3d, there were negotiations between Mr. Ramsey and the Shell Corporation and it is concerning those negotiations that Mr. Ramsey says he continued to talk to Mr. Cave — these negotiations must have been had with Mr. DeVeney. It is true that Mr. DeVeney did have subordinates who sometimes visited properties under investigation, but the record shows that they always reported to Mr. DeVeney and that he had the final word in all such negotiations. Yet Mr. DeVeney says very positively: "I didn't know Mr. Ramsey at all in connection with this transaction."
It must be remembered that Mr. Ramsey claims that from April 3d until near the end of July he was in almost constant negotiation with the Shell Corporation — necessarily with Mr. DeVeney, its "real estate man" and yet, as we have shown, the latter, who has no possible interest in the outcome of this case, says that at no time did he ever know of Mr. Ramsey in connection with this purchase by his company.
It is equally strange that if during April, May, June and July, plaintiff, on almost every Saturday, was reporting to Mr. Cave the progress of his negotiations with the Shell Corporation, Mr. Cave would have had no recollection whatever that any single one of these conversations took place.
We find ourselves of the opinion which we expressed originally that the record does not show that Mr. Cave, or any other official of the defendant corporation knew, or had any reason to know, that the Shell Corporation, to which an option was granted on August 23, 1929, was so closely and intimately identified with the New Orleans *Page 258 
Refining Company referred to in the letter of April 3, 1929, as to warrant the conclusion that any of those officials should have known of that relationship. And unless they had or should have had such knowledge, we see no reason to hold defendant liable to plaintiff. In effect, this was the situation: Ramsey wrote to Cave that he had submitted the property to New Orleans Refining Company. Cave wrote back and said that he would protect Ramsey's commission if the property should be sold to that corporation. Four months later, Shell Refining Corporation, not theretofore mentioned in the correspondence, appeared through another broker and bought the property, and defendant paid the full commission to this other broker, having no knowledge of the fact that the purchaser, Shell Corporation, was so closely identified with New Orleans Refining Company as to warrant its being treated as the same.
If Ramsey had that knowledge as he says he did it would have been a very easy thing for him to have corrected his original letter, and in a new letter to have said to Cave that whereas he had mentioned in his earlier letter that he was submitting the property to New Orleans Refining Company, in truth and in fact it was Shell Petroleum Corporation which was interested.
There is still another point to which we gave little attention in our original opinion, having concluded that for other reasons the defendant should prevail and this other point is the contention of defendant that even if Mr. Cave should have treated New Orleans Refining Company and Shell Corporation as, in effect, one and the same, still because of the lapse of time between the letter of April 3, 1929 and the granting of the option on August 23, 1929, defendant corporation and Mr. Cave were justified in treating the contract as having terminated without result.
Plaintiff maintains that by the letter of April 3d, he was guaranteed protection against a sale to this prospect through any other broker and that this guarantee should be held to have continued in existence for a reasonable time, and he maintains that since no specified time limit was fixed in the letter, under the custom which prevails in this locality six months should be considered a reasonable time. It is true that the record shows that ordinarily in this locality it is customary, where there is a written contract by which a broker is given an agency to sell real estate, six months is the time limit fixed in the contract. But we are not at all certain that under the facts here it would be proper to hold that the protection afforded by the letter should be construed as continuing for so long a time. Here the property was not placed in the hands of a real estate agent for the purpose of finding any prospect, but it was given to him merely that he might submit it to one particular prospect which had already been named by him. All that he had to do was to submit it to that particular prospect and to negotiate with that one prospect for a reasonable time.
Of course, if that prospect had continued actively to negotiate concerning the price or terms or conditions, the broker would have been entitled to time to attempt to bring the parties together. But we have already found that the record shows that there were no such continued negotiations and, therefore, we see no reason to hold that four months after the original submission the defendant should still consider that it was under obligation to Mr. Ramsey to treat him as the only broker through whom the property might be sold to that prospect. Therefore, Mr. Cave, long before August 23d, was fully justified in assuming that Mr. Ramsey had been unable to interest his prospect, — it is immaterial whether it was New Orleans Refining Company or Shell Petroleum Corporation. And he was also fully justified in negotiating with another broker when that other broker came to him with an offer for the property.
In Bullis Thomas v. Calvert, et al., 162 La. 378,110 So. 621, is found a case which presents a question rather similar and there the Supreme Court followed a rule of law which we think applicable here. The Court, citing Grace Realty Co. v. Peytavin Planting Co., 156 La. 93, 100 So. 62, 43 A.L.R. 1096, and Grand Agency, Inc., v. Staring, 156 La. 1094, 101 So. 723, recognized the well established rule that "* * * a broker who was the procuring cause of a sale would be protected as to his commission against any fraudulent or unfair attempt on the part of his principal to deprive him thereof. * * *" [162 La. 378, 110 So. 622.] But also recognized the rule, equally well established that where a broker has failed to effect a sale and negotiations have been discontinued, the owner, if there is no fraud involved, may, himself, continue the negotiations and is not liable for the commission if the negotiations *Page 259 
are successfully concluded solely through the efforts of the owner. The Court said: "* * * this court has with equal consistency always held that, where a broker has failed to effect a sale, and negotiations have ceased or been broken off, the owner may take up the negotiations where they were left off and himself complete the sale, and the mere fact that the sale may in some degree have been aided by the previous efforts of the broker does not of itself entitle the latter to a commission; i.e., unless it clearly appear that those efforts were in fact the procuring cause of the sale. Lewis v. Manson, 132 La. 817, 61 So. 835, and authorities there cited; Freeman [ Freeman] v. Torre [Realty Imp. Co.], 157 La. 1093, 103 So. 334." See, also, Gamblin v. Young, La.App., 187 So. 854.
Ramsey's efforts here were not the procuring cause of the sale. We think that his negotiations had completely terminated and that the owning corporation was justified, several months afterwards, in entering into new negotiations through a new broker.
Our original opinion and decree are reinstated and made final.
Original opinion and decree reinstated.