Plaintiff, a licensed real estate broker, sued defendant to recover a commission of $600 allegedly due him on a sale by defendant of property in the Town of Marksville, Louisiana, called "The Pine Court", to one Cylton Gagnard. He alleges that on July 7, 1945, by written contract defendant listed the property with him for sale and agreed to pay him a 5% commission based on the sale price, provided he, plaintiff, procured a buyer thereof within the time limit fixed therein. He also alleged, as is true, that said written contract expired October 5, 1945, without any sale thereunder having been effected, and additionally that thereafter on or about December 1, 1945, defendant again, but verbally, listed the property with him for sale and again agreed to pay him a commission of 5% on the price of sale should plaintiff procure a purchaser therefor. He further alleges that when the property was listed with him the second time defendant wanted $13,000 net therefor, which meant that a price in excess of this amount would have to be gotten if he would receive any compensation for his services; that petitioner finally decided to ask $13,500 for the property so as to realize a $500 commission for his services in negotiating a sale, with: "an understanding between petitioner and defendant that, in the event said property could not be sold for Thirteen Thousand Five Hundred No/100 ($13,500.00) Dollars, a reduction would be made and petitioner would be paid his regular Five (5%) per cent commission on the sale price."
Plaintiff also alleged that immediately after being employed verbally to sell the property he busied himself toward procuring a buyer therefor and that on February 14, 1946, he interested said Cylton Gagnard therein and received from him an offer that was submitted by him to defendant, who lives in Baton Rouge, Louisiana; that defendant did not give to petitioner a definite answer on the offer but immediately thereafter personally contacted said Gagnard and finally consummated sale of the property to him on April 20, 1946, for $12,000 cash.
On the theory that he first interested. Gagnard in the property and procured him as purchaser thereof, plaintiff claims he has earned and is entitled to be paid the commission *Page 785 
for which he sued, notwithstanding the sale was ultimately closed by defendant, the owner, personally.
Defendant denies each and every allegation of the petition save those to the effect that the property was listed for sale with plaintiff on July 2, 1945, and that the contract expired as alleged.
Plaintiff's demand was rejected and his suit dismissed, from which action of the court he appealed. The trial judge gave lengthy written reasons to support the judgment rendered by him.
In this court defendant's position is that he did not verbally on the 'phone February 14, 1946, as alleged and testified to by the plaintiff, employ or authorize him to sell the property; but, alternatively, contends that even though it should be found and held that he did so employ plaintiff, immediately thereafter plaintiff abandoned the contract and ceased all efforts to induce Gagnard to purchase the property, which action, he alleges, warranted him in selling the property to Gagnard or any one else who wished to buy it.
The established facts in the case and to some material extent plaintiff's own testimony, are at variance with the allegations of his petition.
About the time the written contract between the parties to this suit expired, defendant leased the court to one Deo Lemoine to whom was given a preference to purchase. Thereafter, until some time in January following, it is admitted, plaintiff had no authority of any sort from defendant to offer the property for sale. But in January, the exact date not being fixed, plaintiff called defendant on the 'phone and asked him if he then desired to sell the property. Defendant replied in the affirmative, adding that Lemoine had been given a preference to purchase. He stated to defendant that his price was $13,500 net. Defendant is positive that he did not then list the property with plaintiff for sale, never agreed to pay him any commission, even if sale for the quoted price should be consummated by him, and, this being true, of course, did not fix a time for plaintiff to find a purchaser and close a sale.
Lemoine declined to exercise his right to purchase the property. Plaintiff is certain that thereafter defendant authorized him to go ahead and try to find a buyer and that if he could not find one who would pay said price, the price would be changed or reduced; that if he found a purchaser he would be compensated by defendant. Following this 'phone conversation and Lemoine's declining to buy the property, plaintiff endeavored to sell the Court, offering same for $14,000, which included $500 for himself. He admits that no time limit was given him in which to find a purchaser. One or more prospects declined to buy at the quoted price.
On or about February 9th, after having learned that Gagnard had recently moved back to Marksville from New Orleans, plaintiff approached him with the view of interesting him in the Court. The matter was not gone into at length as Gagnard was preparing to return to New Orleans but he stated to plaintiff that he would contact him immediately upon his return, and did so. This was on February 14th. Gagnard was shown through the Court and he testified that he made plaintiff an offer of $13,500 for it. Plaintiff says this is not true, and, on the contrary, testified that Gagnard offered only $12,500. On that date plaintiff wired defendant that he had an offer of $12,500 for the Court and asked to be advised at once if he was interested. Defendant called plaintiff on the 'phone that day and testified that he told him he would not sell for that price. Plaintiff testified that defendant told him then he would take $12,500 for the property and asked for the name of the prospect which was given to him, but, strange as it may seem, plaintiff admits that defendant's decision to sell for $12,500 was never communicated by him to Gagnard although both were then living in the Town of Marksville. He says he endeavored to contact Gagnard several times thereafter but was unsuccessful.
Gagnard testified that plaintiff informed him that his offer of $13,500 had been declined by defendant and thereupon he, Gagnard, said to plaintiff that he was no further interested in the property as a prospect, and to forget about him as such. *Page 786 
Plaintiff further testified that after the 14th of February he continued his efforts to procure a purchaser of the property and did receive one offer of $12,000 therefor, which, he says, he submitted to defendant and which he declined.
Plaintiff admits that about three weeks after February 14th defendant 'phoned him and stated that he "had changed his mind", by which, we assume, he had decided not to sell. On this phase of the matter defendant testified that within a few days after February 14th, plaintiff again called him in regard to selling the property and that he then reduced the price to $13,000 net; that plaintiff informed him that he would advise him further in connection therewith as soon as he had a "meeting" of some sort; that he waited awhile to hear from plaintiff and not having heard from him further on the subject, he called plaintiff on the 'phone and "told him that I had presumed the deal had fallen through and he said it was too high. Then I told him to drop it — the matter was closed."
Within two or three days after the last above mentioned conversation with defendant, Mr. Gagnard, on his way to New Orleans, contacted defendant in Baton Rouge and discussed with him the purchase of the property. He evidenced an interest therein and made an offer of $13,500 for it, plus some adjoining back lots, but the offer was declined. Defendant then decided that Gagnard had ceased to be a prospect and, over his own name, on April 6th advertised the Court for sale in a newspaper published in Marksville. Gagnard was then in New Orleans endeavoring to sell some property he owned there and was immediately advised of the advertisement by a sister who lives in Marksville. He at once got in touch with defendant and asked him to hold the property for him for a short time. They finally agreed upon the terms of the sale that was signed on April 20th. Some delay was experienced in closing the sale because Gagnard was unable to pay the price until sale of his New Orleans property was closed.
Mr. Gagnard testified that before closing negotiations with defendant he employed a competent man to closely inspect the Court buildings and the attached residence to ascertain their physical condition and to make appraisement thereof; that this expert discovered considerable decay in the foundation timbers and put a value of $12,000 on the property; that this appraisement and the condition of the buildings were brought to defendant's attention and had an influence upon him in reducing the price previously fixed by him.
Both defendant and Gagnard deny that by closing the sale of the property in the manner related, they, or either of them, acted out of a purpose or desire to circumvent plaintiff with respect to a commission on the price thereof. Naturally, Gagnard was not concerned, as he says, in this phase of the controversy. We are convinced of the truth of their testimony on this score. Defendant did not seek out Gagnard to sell him the place. Gagnard first contacted defendant and continued to do so until the sale was finally closed.
[1] The undisputed testimony warrants the conclusion that when plaintiff called defendant on the 'phone in January, at which time there was no contractual relation between them, defendant simply gave him the net price at which he would sell the Court and authorized him to offer the property therefor, plus any additional amount plaintiff wished to include as compensation for his services as broker. Beyond this, we conclude, defendant did not agree to protect plaintiff in the matter of a commission for his services in the event of sale, and fixed no time limit within which to effectuate a sale. This being true, defendant had the right at will to terminate, in good faith, their relationship and we are certain that he so acted.
Plaintiff had for some five months the right to sell the property but failed to bring forth a buyer who was willing, ready and able to buy for the price quoted to him. Defendant decided to eliminate plaintiff entirely from the matter and undertake personally selling the property in the manner herein related.
It is true plaintiff contacted Gagnard before he sought directly to purchase from defendant, and showed him over the Court but prior to that time Gagnard knew the property was for sale and had discussed *Page 787 
buying it with members of his own family in Marksville.
In view of the facts, as we find them to be, it is not open to question that plaintiff had utterly failed in his efforts to bring defendant and Gagnard together on common ground. The nearest approach to such an achievement was when, according to Gagnard, plaintiff on February 14th offered the property to him for $14,000, whereas Gagnard was willing to pay only $13,500. But it is likely this offer contemplated inclusion of the back lots that are not really an integral part of the Court. In this connection, it must be recalled that in submitting Gagnard's offer to defendant, plaintiff stated that the price Gagnard was willing to pay was only $12,500. A question of veracity between plaintiff and Gagnard arises. The trial judge accepted Gagnard's version of the facts. If this offer did not include the back lots and had it been submitted to defendant at $13,500, it is highly probable a sale could have then been consummated and plaintiff received a commission of $500, as defendant thereafter reduced the price to $13,000 net to him.
We are strongly inclined to the belief that plaintiff's own desire to reap a commission in excess of the usual 5% served to prevent a sale to Gagnard on or immediately after February 14th.
Defendant was clearly within his rights when he revoked the limited authority he gave plaintiff in January to seek a purchaser of the property. By so acting he inflicted upon plaintiff no financial loss or injury. At that time defendant had no good reason to think or believe that Gagnard nurtured ambition to own the Court; and plaintiff evidently had dismissed him from consideration as a likely prospect because he had for some time prior ceased to try to sell him the property or quicken his interest therein, but had endeavored to sell it to others. Therefore, it cannot be said that plaintiff's efforts were the procuring cause, except possibly to a very remote extent, of the sale that was finally made to Gagnard.
[2] The facts of this case in a large degree are very much like those of the case of Bullis Thomas v. Calvert et al., 162 So.2d 378, 383, 110 So. 621, 623, wherein the court repeated the legal principles, often theretofore announced by it, controlling in cases of this character, in the following language, viz.: "On the other hand, this court has with equal consistency always held that, where a broker has failed to effect a sale, and negotiations have ceased or been broken off, the owner may take up the negotiations where they were left off and himself complete the sale, and the mere fact that the sale may in some degree have been aided by the previous efforts of the broker does not of itself entitle the latter to a commission; i. e., unless it clearly appear that those efforts were in fact the procuring cause of the sale. Lewis v. Manson,132 La. 817, 61 So. 835, and authorities there cited, Freeman [ Freeman] v. Torre [Realty Improvement Co.,] 157 La. 1093,103 So. 334."
It was held in Lewis v. Manson, supra, as reflected from the syllabus, viz.: "If a broker attempts unsuccessfully to effect a sale of land, and his proposed purchaser abandons the idea of buying, but he is afterwards induced to do so by the principal or by another person, without being in any way influenced by the broker, the latter is not entitled to any commission."
And in Ford v. Shaffer et al., 143 La. 635, 79 So. 172, the court ruled as follows: "The conditions of a brokerage contract being that the owner of the property is to pay a stipulated commission if the broker effects a sale or procures a purchaser at a stated price, the broker is not entitled to the commission if the owner sells the property without the broker's aid, long after the broker has tried and failed to effect a sale, even though the sale was made to one whom the broker introduced, but failed to interest, as a prospective purchaser."
The case of Gamblin v. Young, reported in La. App., 187 So. 854, decided by this court, is in point.
[3] Plaintiff's counsel submitted lengthy, forceful brief in support of his position in the case. He cited and quoted from the case of Jeter Monroe v. Daniels, La. App., 25 So.2d 911, 912, recently decided by this court, as sustaining his position wherein several other cases on the subject are cited, *Page 788 
and quoted from. But, in this last mentioned case, the court re-announced the rule that well fits the case at bar and precludes recovery by the plaintiff, when it said: "In every case where the broker has procured the purchaser, the courts have awarded judgment. The only exceptions are cases where the broker has been unsuccessful and has abandoned efforts to make the sale, and later the owner has made a sale direct."
We find no error in the judgment from which this appeal was taken, and, for the reasons herein given, it is affirmed with costs.