53 So.2d 259 (1951)
CORBITT
v.
ROBINSON.
No. 7646.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1951.
On Rehearing June 29, 1951.
*260 C. B. Prothro, Shreveport, for appellant.
W. S. Waller, W. M. Phillips, Shreveport, for appellee.
KENNON, Judge.
Mrs. C. W. Corbitt, a licensed real estate broker, filed this suit to recover $519.97 allegedly due her as a commission on a sale by defendant Stephen H. Robinson, of a lot and apartment house in Bossier City, Louisiana. The petition recites that plaintiff, on the 17th day of March, 1949, was employed by defendant to find a purchaser for the property in question; that she inserted advertisements in the two daily newspapers of Shreveport; that on the 9th day of April, she showed the property to Mrs. Etta B. Meeks, and that on April 23, 1949, a deed was filed for record wherein the defendant sold the identical property to Mrs. Etta B. Meeks as a result of the efforts of plaintiff, and that therefore plaintiff was the procuring cause of the sale and entitled to a commission, notwithstanding the fact that defendant, on April 14, 1949, notified plaintiff that he was taking the property off the market.
Defendant admitted ownership of the property and his employment of plaintiff to find a purchaser, and that the property had been sold to Mrs. Meeks on the date alleged, but set forth that plaintiff had no exclusive agency and knew that defendant would make efforts of his own to find a purchaser. The answer further admitted that plaintiff did show the property to Mrs. Meeks, but that Mrs. Meeks, at the time, did not purchase because the price was too high and the premises were in poor condition of repair, and that it was after defendant had withdrawn the property from plaintiff's agency that Mrs. Meeks again contacted him, and that the sale made by him directly to Mrs. Meeks was on terms different from those authorized while plaintiff had the agency.
From a judgment in favor of defendant, plaintiff prosecutes the present appeal.
The purchaser, Mrs. Etta B. Meeks, is a school teacher living in Bossier City. Seeing one of the advertisements inserted in the newspaper by the plaintiff, she made inquiry. Mrs. Corbitt drove to Mrs. Meeks' place of residence and took her to inspect defendant's property. Mrs. Meeks liked the location, but complained of the run down condition of the house and of the price. This inspection trip was made on April 9th. Mrs. Meeks asked plaintiff not to telephone her on the subject as the telephone arrangements at the place where she lived were not convenient. She assured Mrs. Corbitt that if she decided to buy, and after she had made some financial and other arrangements, she would call. Mrs. Corbitt continued to advertise the property for sale and showed it to other prospects.
On April 14th, defendant's wife, at his request, notified Mrs. Corbitt that the property was being withdrawn from sale. On the day following, Mrs. Meeks, still interested in the property, on her own accord, went alone to the premises because as she put it, "I wanted to go by there by myself * * * where I could have time to look and think and not be bothered by sales talk * * * I asked for permission to go over the house again * * * I had been looking at other houses and *261 had been unable to find anything right close to my work * * *."
While there she talked to Mr. and Mrs. Robinson, who informed her that they had "taken it (the advertised premises) back" from Mrs. Corbitt, and began negotiations with Mrs. Meeks. The next day was Saturday and Mrs. Meeks went to her family home at Monroe, Louisiana, where she discussed the proposed purchase and was cautioned against the danger of termites in an old building. During the following week, Mrs. Meeks dealt directly with Mr. Robinson, who agreed to furnish a "termite bond," to make certain repairs, to leave in an attic furnace, and to reduce the price to $10,799.40 as compared to a minimum price of $10,950.00 made to Mrs. Meeks through Mrs. Corbitt as agent.
It was through an advertisement in a newspaper inserted by plaintiff and paid for by her that Mrs. Meeks became acquainted with the fact that the property was for sale. The deed was finally passed just two weeks after April 9th, the day on which plaintiff carried this prospective purchaser to the premises and went over the premises with Mrs. Meeks and gave her the usual real estate "sales talk." The fact that plaintiff did not contact Mrs. Meeks before Mrs. Meeks voluntarily returned to look over the property is explained by the fact that Mrs. Meeks requested that she not be called due to the inconvenient telephone arrangements at the place where she lived. On April 14th, five days after Mrs. Corbitt had taken Mrs. Meeks to see the property, Mrs. Meeks returned of her own accord for the purpose of looking the property over and examining it in detail when she would not be under pressure of sales talk and would be free to "look and think." It was on this visit that the defendant and his wife began to negotiate directly with Mrs. Meeks, and Mrs. Corbitt was not called in further and the sale was completed nine days later.
A reading of the entire record makes it clear that, had the Robinsons not directly taken over negotiations with Mrs. Meeks at the time of her April 14th visit, she would have, in due course, called plaintiff and completed the negotiations through her as agent. The fact that plaintiff still considered Mrs. Meeks a live prospect is indicated by her action in telephoning her some days after the sale and asking her if she was still interested. It was during this conversation that she found out that the sale had been consummated by the Robinsons directly.
Plaintiff was available and had defendant notified her about Mrs. Meeks' April 14th visit, she doubtless would have participated in the continuing negotiations with the customer who had been introduced to Mr. Robinson and to the premises through Mrs. Corbitt's efforts.
In this case we find no evidence of bad faith on the part of defendant. However, we do find that the sale by defendant to Mrs. Meeks came as a result of the efforts of plaintiff and that she was the procuring cause of the sale as defined in Louisiana cases and within the meaning of the phrase "procuring cause" below quoted from Black's Law Dictionary, Third Edition, page 1437: "The approximate cause; the cause originating a series of events which, without break in their continuity, result in the accomplishment of the prime object."
Defendant cites the case of Turner v. Swann, 11 La.App. 689, 124 So. 717, 718. We agree with the principle of law set forth from Judge Odom's opinion in that case:
"Cases like this fall, not under the decisions above referred to, but are governed by the rule announced in Lewis v. Manson, 132 La. 817, 61 So. 835; Hauch v. Bonnabel, 134 La. 847, 64 So. 795; and Ford v. Shaffer, 143 La. 635, 79 So. 172.
"In the case of Lewis v. Manson, supra, it was held that, if a broker attempts unsuccessfully to effect a sale of land, and his prospective purchaser abandons the idea of buying, but is afterwards induced to do so by the principal, the broker is not entitled to a commission. That is precisely what happened in the case at bar. The plaintiff attempted to negotiate a sale with the city. The city turned his proposition down, and negotiations between the two ceased. Long after that, the defendant *262 took the matter up with the city, and, through his own efforts, made the sale." (Emphasis added.)
In the case before us, the facts are different from those in the above case in that Mrs. Meeks, the prospective purchaser, did not "abandon the idea of buying."
The case referred to in the above quotation is further different on the facts from the case before us in that the sale there took place "long after" and at a time when the defendant resumed negotiations on his own accord with the prospective purchaser.
We think the law applicable to the case before us is the same as set forth in the following quotation from U. S. Realty Sales of Shreveport v. Rhodes, La.App., 34 So.2d 523, 524: "We concede the proposition of law urged by the plaintiff that one who is employed as a broker becomes entitled to his commission whenever he procures for his principal a party with whom he is satisfied and who actually contracts for the purchase of the property and that once the owner and purchaser are brought together through the broker's efforts the fact that the sale is afterwards consummated between owner and purchaser without the broker's knowledge or presence does not relieve the owner from liability to pay the broker's agreed commission. Sollie v. Peoples Bank & Trust Co., La.App., 194 So. 116."
The fact that the principal under such circumstances makes the sale to a prospective purchaser at a lower price than that submitted to the purchaser through the agent, does not deprive the agent of his right to a commission, if the other circumstances are present, as is noted from the following language of the Court in the case of Kaufman Agency v. Viccellio, La. App., 174 So. 709, 711: "* * * And where the agency is not exclusive, but the agent is the moving cause in securing a purchaser, and the principal, without the knowledge of the agent, sells to this prospective purchaser, at a lower price, the agent is entitled to his commission. Grace Realty Co. v. Peytavin Planting Co., Inc., 156 La. 93, 100 So. 62, 43 A.L.R. 1096."
Another case in which this Court has discussed the applicable authorities is White v. Havard, La.App., 25 So.2d 108.
In the case before us, as in the White case, supra, we find that the defendant acted in good faith and closed the deal directly with Mrs. Meeks under a misapprehension or misunderstanding of plaintiff's rights under the law. Plaintiff had certainly produced in the person of Mrs. Meeks a party who was interested in the property and her final failure to actually perform the acts incident to the closing of the sale must be attributed to the fact that Mr. and Mrs. Robinson informed Mrs. Meeks at the time of her April 14th visit to the property that they were the ones to deal with and not Mrs. Corbitt.
For the reasons assigned, the judgment appealed from is reversed and judgment is now rendered in favor of plaintiff, Mrs. C. W. Corbitt, and against the defendant, Stephen H. Robinson, in the sum of $519.97, with legal interest from judicial demand until paid, and for costs of both courts.
TALIAFERRO, J., dissents and assigns written reasons.
TALIAFERRO, Judge (dissenting).
My appreciation of the undisputed facts of this case impels me to disagree with the majority opinion. My reasons for so doing are reflected from the following statement, to-wit:
Plaintiff was given by defendant the exclusive right for fifteen days (from March 17, 1949) in which to find a purchaser for the property for the price of $11,750.00. She failed to do so. On or about April 1st, subsequent to or the day on which the fifteen day limit expired, defendant, or his wife under his direction, called plaintiff and informed her that other realtors were being given the right to sell the property and at that time plaintiff was told that the price had been reduced to $10,950.00. From that time on each of the several realtors had the same right to offer the property for sale for that price, and this right continued until April 14th. However, on or *263 prior to April 9th, Mrs. Meeks read plaintiff's "ad" in a newspaper and got in touch with her. The property was shown to Mrs. Meeks by plaintiff but she positively declined to buy at the quoted price, assigning as reason therefor its run-down physical condition. She told plaintiff, as they parted, on that day, that should her interest in the property be quickened, or words to that effect, she would get in touch with her, and asked, for personal reasons, that she not be called on the 'phone. She did not enjoin upon plaintiff not to otherwise get in touch with her. From April 9th plaintiff made no further effort whatever to interest Mrs. Meeks in the purchase of the property, but did show it to other prospects.
On April 14th defendant or his wife, `phoned to plaintiff, and, presumably to the other realtors, and stated that the property had been withdrawn from sale. It is argued, and probably correctly, that this meant that the right of the realtors to sell it was terminated, and that plaintiff, himself, would try to dispose of the property by reducing the price.
Coincidentally, all agree, Mrs. Meeks on her own motion, a day or two in advance of a contemplated visit with relatives in the City of Monroe, Louisiana, on April 15th, again inspected the property and again refused to buy for the same reason assigned by her on April 9th. She was then told by defendant that plaintiff no longer had the property for sale, to which she replied that this being true, she would just as soon deal with defendant, or words to that effect. She, however, must have then been interested in acquiring the property because while in Monroe that week-end, she discussed it with her relatives. They cautioned her about buying an old place unless and until she was protected against termite infestation. She then called defendant and talked with him about a bond to protect her against termites, and he agreed to do this. It cost him $344.00 to have the building treated against termites.
After Mrs. Meeks returned from Monroe, she again took up with defendant the matter of buying the property and finally they reached an agreement, but at a price considerably less than $10,950.00.
As a condition to the agreement to buy by Mrs. Meeks, defendant, in addition to securing the termite bond, agreed that the air cooling equipment, valued at $400.00, would not be removed from the building. This, it appears was not included in the price of $10,950.00. And, in addition to all this, defendant agreed to do and did carpentry work, papering and painting of the value of $400.00.
The only point in plaintiff's favor is that she was instrumental in finding the person who eventually bought the property. It cannot be said that she brought the parties together on common ground and it is certain she would never have been able to sell the property to Mrs. Meeks for $10,950.00. Also, it cannot be said that plaintiff found one who was ready and willing to buy for the price the realtors, including the plaintiff, were authorized to sell. It has been repeatedly held that in a case where the realtor has failed to bring the parties together, and ceased his efforts to do so, the owner, in good faith, may renew negotiations with a prospect and should a sale be ultimately consummated, no commission will be due the realtor; a fortiori is this true when the prospect, himself, voluntarily renews the negotiations. See: Viguerie v. Mathes, 10 La. App. 246, 120 So. 542; Fellman v. Ecuyer, 2 La.App. 398; Wittenberg v. McGrath, 3 La.App. 244; Cobb v. Saucier, La.App., 30 So.2d 784; Gamblin v. Young, La.App., 187 So. 854; Ford v. Shaffer, 143 La. 635, 79 So. 172.
And, this is true, even though the efforts of the broker have to some degree aided in closing the sale. See: Lewis v. Manson, 132 La. 817, 61 So. 835, and cases cited therein; Freeman & Freeman v. Torre Realty & Improvement Co., 157 La. 1093, 103 So. 334; Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621.
In the leading case of Bullis & Thomas v. Calvert, supra, it is held: "Where broker has failed to effect sale, owner may take up negotiations where they left off, and himself take up sale, without becoming liable for commission, unless broker's efforts *264 were in effect procuring cause of sale."
Black's definition of what may be "A procuring cause" is quoted in the majority opinion. Employing this definition as a proper yardstick plaintiff must fail. The series of events were not continuous. They were broken in at least three important ways: (1) Plaintiff's authority to find a purchaser was terminated; (2) The property was withdrawn from sale, and (3) Negotiations finally culminating in a sale were initiated by the prospect with the owner, not by the owner with the prospect.
It will not be contended that had defendant not sold the property to anyone, or had sold it to some person other than Mrs. Meeks, that plaintiff would have been entitled to a commission on the sale price. This being true, it follows from plaintiff's contention that because of the little aid she put forth in the effort to sell the property to Mrs. Meeks, it was sufficient to forever bar sale to her by defendant unless he was prepared to pay to plaintiff a commission on such sale. This would appear to be a highly unreasonable and illogical situation. Therefore, I respectfully dissent.

On Rehearing
KENNON, Judge.
Defendant, in his application for rehearing, called our attention to the fact that the net amount received by him was slightly over $1,000 less than the price shown in the deed. As a consequence, we granted a rehearing.
We find that the defendant, in conducting the negotiations with the purchaser which led to the sale, agreed to furnish a termite certificate or bond, to make certain repairs, and to furnish an air-conditioning unit not included in the original negotiations. We therefore conclude that the commission sought should be reduced by $50, because of these reductions in the net consideration received by defendant.
For the reasons assigned in the original opinion, and considering the above, judgment is now rendered in favor of plaintiff, Mrs. C. W. Corbitt, and against defendant, Stephen H. Robinson, in the amount of $469.97. Defendant to pay costs of both courts.
TALIAFERRO, J., dissents, adhering to his former opinion in this case.