CULPEPPER, Judge.
This is a suit by a real estate agent for a five per cent (5%) commission allegedly due on rentals, under an oral agreement between plaintiff and defendant, pursuant to which plaintiff secured a lessee for defendant’s commercial building. Defendant admits paying the 5% commission during the one year primary term of the lease but denies the existence of any agreement under which he is bound to pay commissions on rentals paid by this tenant after the first year. From an adverse judgment, rendered after trial on the merits, defendant appeals.
The facts show that defendant entered into an oral agreement with plaintiff, whereby the latter was to act as agent in leasing a portion of a commercial building, for a commission of 5% of the rentals. Plaintiff placed a “For Rent” sign on the property, advertised in a newspaper and, in fact, secured a tenant, Mrs. Velma Begnaud, who operated a beauty parlor on the premises.
The written lease contract, entered into between defendant and Mrs. Begnaud, provided for a term of one year beginning March 1, 1959 and ending February 29, 1960, at a monthly rental of $250, payable in advance at the office of the plaintiff, J. Alfred Mouton, Inc. The lease also-provided that at the end of the first year,, the lessee had the option of renewing the lease for a period of five years at a rental mutually agreeable, but not exceeding $300' per month.
During the first year of the lease, Mrs. Begnaud paid the rentals to plaintiff agency,, who in turn deducted their 5% commission of $12.50 and deposited the remaining, $237.50 in a bank to the account of the defendant, Mr. Breaux.
At the end of the first year, the defendant wrote a letter to plaintiffs stating r “Since our contract for one year ended on February 29 of this year, and I had to make a new agreement with my tenant, Mrs. Velma Begnaud, in order to keep her, I am having her make her payments direct to me, therefore eliminating a third party and cut cost to her.”
The evidence shows that at the end of the first year of the lease Mrs. Begnaud did not formally exercise her five year option but she did remain in the premises on a month-to-month basis. The rent was reduced from $250 to $237.50, the reduction of $12.50 being the exact amount of the 5% commission received by plaintiff during the first year. This rental of $237.50 was paid for about three months, until after the instant suit was filed, at which time the rent was reduced to $230 per month. At the time of the trial of this matter, on December 6, 1961, almost two years later, Mrs. Begnaud was still a tenant paying $230 a month.
Mrs. Begnaud testified that she refused to exercise her five year option because she *667 did not want to obligate herself for that long a period of time. Further, that she could not pay the rental of $250 and therefore she and Mr. Breaux agreed on a rental of $237.50, which after three months (and after this suit was filed) was further reduced to $230 a month.
The principal contention of the defendant, Mr. Breaux, is that since Mrs. Begnaud did not exercise her five year option, the present month-to-month rental agreement between defendant and Mrs. Begnaud is a distinct and separate contract from the original lease obtained by plaintiff, and therefore no commissions are due.
On the other hand, it is the contention of the plaintiff that defendant agreed to pay a commission of 5% of the amount of the rent as long as Mrs. Begnaud remained in the premises, during the primary or optional five year term of the lease. Plaintiff’s position is that Mrs. Begnaud has in legal effect exercised her option and continued the original lease. Of course, the real meaning of this contention is that the new arrangement between defendant and Mrs. Begnaud was not made in good faith, but for the purpose of avoiding payment of commissions to plaintiff.
Although the testimony was conflicting, the trial judge sustained plaintiff’s contention and held as follows :
“After considering the evidence in this action the Court finds that there was an agreement between plaintiff and defendant whereby plaintiff would receive 5%' of all rentals paid by the tenant of defendant on premises covered by a lease between defendant and tenant for a primary term of one year, and a like percentage of all rentals paid by that tenant to defendant during an option period of five years if exercised by the tenant. The Court believes that the present arrangement between the tenant and defendant, although slightly different in terms, must be considered as an exercise of the option by the tenant and that plaintiff is entitled to 5% of all rentals paid by the tenant to defendant since the expiration of the primary term of the lease in question, and is also entitled to 5% of all future payments made by the tenant to defendant during the five year option period, * Hí ‡ "
The record amply supports this finding of fact by the trial judge. The plaintiff has proved the contract pursuant to which he obtained a tenant who is still renting the premises. The evidence amply supports the finding by the trial judge that the slightly different arrangement made between the owner and the tenant after the first year was not made in good faith and must be considered as an exercise of the option, insofar as the plaintiff is concerned. See 8 Am.Jur. 1007-1010 Verbo Brokers, Section 37-46 for the general rules of law with reference to termination of employment of an agent with particular reference to the requirement of good faith. See also Taylor v. Martin, 109 La. 137, 33 So. 112 and Cobb v. Saucier, La.App., 30 So. 2d 784 holding that termination of a brokerage contract is subject to the requirement of good faith.
One of the principal arguments made by counsel for defendant, in his brief filed in this court, is that plaintiff did not call as a witness, its employee, Mr. LaChaussee, with whom defendant contends he made the verbal brokerage contract. This argument has no merit for the reason that the evidence shows it was Mr. J. Alfred Mouton, Jr., and not Mr. LaChaussee, who made the contract with defendant. Mr. Mouton did testify, and the trial judge accepted his version of the contract.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.