PONDER, Justice.
 

 Latter & Blum, Inc., a real estate firm domiciled in the City of New Orleans, brought suit against the Metropolitan Life Insurance Company, the seller, and E. V. Richards, Jr., the purchaser of the Union Building in New Orleans, now known as the Richards Building, for the sum'of $48,-100 as a commission on the sale of the building by the Metropolitan Life Insurance Company to E. V. Richards, Jr., for the purchase price of $1,200,000.
 

 The plaintiff seeks to recover from the Metropolitan Life Insurance Company, hereinafter referred to as Metropolitan, on the basis of a contract of employment and in the alternative on quantum meruit. The plaintiff seeks to recover from Mr. Richards only in the alternative on quantum meruit and tort.
 

 The defendants answered the suit, setting forth in effect that there was no contract of employment between either of them and the plaintiff, and that the plaintiff did not procure the sale of the property.
 

 Upon trial, the lower court rejected the plaintiff’s demand and dismissed the suit. The plaintiff has appealed.
 

 
 *493
 
 From the evidence adduced, it appears that there was no contract between the plaintiff and either of the defendants regarding the sale or purchase of the property.
 

 The parties to this suit were cognizant of the fact that Metropolitan would not grant an exclusive agency for the sale of its real estate or any part thereof. Mr. Birdseye, an employee of Metropolitan and in charge of its New Orleans real estate, informed the plaintiff that he did not have authority to enter into any contract with respect to the sale of this property. He also informed the plaintiff that authority for negotiating such a sale was vested in the real estate committee of the board of directors of Metropolitan, and that each individual offer constituted a separate! transaction to be considered by this committee on a case basis as to price, terms, and commission.
 

 The plaintiff did not appear before the real estate committee at any time or submit any offer directly to it. The president of the plaintiff corporation admits in his testimony that he was acting for his real estate firm and was endeavoring to get a margin in the trade by pressing the buyer up to the maximum price and the seller down to the minimum price.
 

 The parties to this suit were cognizant of the fact that the sale of this building was open to any and all real estate agents, and that no exclusive agency was granted to anyone.
 

 Considerable negotiations were, carried on between the plaintiff and th.e defendants with respect to the sale of the building. On December 31, 1942, the defendant Richards informed the plaintiff that he would pay $1,200,000 in cash for the building. The president of the plaintiff corporation testified that he transmitted this offer to Mr. Birdseye a few days thereafter, and it was rejected. Mr. Birdseye denied that this offer was ever communicated to him. On January 13, 1943, the president of the plaintiff corporation addressed the following letter to Mr. Birdseye:
 

 “Dear Henry:
 

 “In Re: Union Building
 

 “I still have the sale of this building before me.
 

 “I am wondering if there are any new angles from -the standpoint of the Metropolitan Life Insurance Company, whereby they could see their way clear to sell the building in the neighborhood of $1,100,000.-00 or $1,200,000.00. It might be possible for me to put this deal through at this particular time on an all cash basis.
 

 “I would be very happy to hear from you at your convenience.
 

 “With kindest regards,
 

 “Sincerely yours,
 

 “Harry Latter”
 

 On the same date, he wrote Mr. Richards as follows:
 

 “Dear ‘Rich’:
 

 “I thought you would be interested' in having the rental status of this property as of the end of their fiscal year, November 30th, 1942.
 

 
 *495
 
 “Enclosed herewith is a memorandum giving these figures, and you will note that it shows a very excellent net return of $78,777.58.
 

 “I still believe I can put over a deal at $1,250,000.00.
 

 “Please let me hear from you in this regard.
 

 “With kindest regards,
 

 “Sincerely yours,
 

 “Harry Latter”
 

 More than a month after these letters were written, Mr. Richards, through Mr. Rudolph S. Hecht, presented an offer of $1,200,000 for the building to Metropolitan. This offer was accepted by Metropolitan with the understanding that there were no brokerage fees due on the transaction. It required Mr. Richards to protect it against such a demand, especially from the plaintiff.
 

 Thereafter, on March 15, 1943, the sale was consummated. At that time, the defendant Metropolitan Life Ins. Co., required the purchaser to sign an instrument wherein it was stated that the sale was not procured through any agency and especially that of the plaintiff. In this instrument, Mr. Richards agreed to protect Metropolitan against any claim that might be presented by any real estate agency and especially the plaintiff.
 

 Mr. Richards’s testimony is to the effect that when he received Mr. Latter’s letter of January 13, 1943, he considered his offer as being rejected. He stated that he was anxious to purchase the building and secured the gratuitous services of Mr. Hecht to assist him in acquiring it.
 

 Mr. Richards and Mr. Hecht were members of the board of directors of the Hibernia Bank and personal friends. Mr. Hecht had previously carried on the negotiations between the Metropolitan and the Hibernia Bank which had resulted in the purchase of the Hibernia Bank Building, and therefore knew the personnel of the real estate committee of the board of directors of Metropolitan.
 

 On January 19, 1943, Mr. Birdseye wrote the president of the plaintiff corporation as follows:
 

 “Re 839 Gravier Street
 

 “New Orleans, Louisiana
 

 “Dear Mr. Latter:
 

 “This will acknowledge receipt of your letter of January 13th regarding the above property.
 

 “We could not at this time give, favorable consideration to an offer around the figures you mentioned either of an all cash basis or part cash and part mortgage basis. With kindest regards, I am
 

 “Yours very truly,
 

 “Henry M. Birdseye
 

 “Office of the Comptroller”
 

 On January 26, 1943, Mr. Latter wrote the following letter to Mr. Birdseye:
 

 “Dear Mr. Birdseye:
 

 “I have for acknowledgment your kind letter of January 19th.
 

 “Should there be any change in the picture whereby your company should con-
 
 *497
 
 elude to sell for approximately $1,200,000.-00, I would appreciate if you will keep me informed, for I believe I can close a deal at approximately this figure at any time you conclude to go ahead.
 

 “With best wishes,
 

 “Sincerely,
 

 “Harry Latter”
 

 From a mere reading of the correspondence between the parties, it is apparent that Mr. Richards’s offer of $1,200,000 was never submitted to Metropolitan. In fact, the president of the plaintiff corporation never at any time informed. Mr. Birdseye or any representative of the Metropolitan that he had a firm or positive offer of $1,-200,000.
 

 From our appreciation of the evidence in this case, the sale was procured through Mr. Hecht. The plaintiff had no exclusive agency with either of the parties to the transaction. The plaintiff failed to negotiate the sale. The testimony shows that the plaintiff was not the agent of either the seller or the purchaser. The plaintiff rep-, resented the interest of neither and was clearly acting in its own behalf. The plaintiff has not succeeded in proving that it was the procuring cause of the transaction. Freeman & Freeman v. Torre Realty & Improvement Co., 157 La. 1093, 103 So. 334.
 

 It is well settled that an agent or a broker is not entitled to a commission except where he has discharged services or duties entrusted to him or has been the procuring cause of the transaction. Taylor v. Martin, 109 La. 137, 33 So. 112; Ford v. Shaffer, 143 La. 635, 79 So. 172; Grace Realty Co. v. Peytavin Planting Co., Inc., 156 La. 93, 100 So. 62, 43 A.L.R. 1096; Freeman & Freeman v. Torre Realty & Improvement Co., supra; Kaufman Agency v. Viccellio et al., La.App., 174 So. 709; Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621; Alex F. Dreyfus Co., Inc., v. Friedman, 171 La. 90, 129 So. 679; Clesi v. Cooney, 164 La. 657, 114 So. 584; Sollie v. Peoples Bank & Trust Co., La.App., 194 So. 116; Doll v. Thornhill, La.App., 6 So. 2d 793; Ramsey v. Harry Bros. Co., La. App., 11 So.2d 256; 24 A.L.R. 1537; Leicht-Benson Realty & Const. Co. v. J. D. Stone & Co., 138 Va. 511, 121 S.E. 883, 43 A.L.R. 1103; Walsh v. Grant, 256 Mass. 555, 152 N.E. 884, 47 A.L.R. 855, 128 A.L. R. 430; 12 C.J.S., Brokers, § 91, p. 207; § 92, p. 214; § 93, p. 215.
 

 There was no contractual relationship existing between the plaintiff and either of the defendants. The plaintiff is not entitled to recover on quantum meruit because it was not the procuring cause of the sale.
 

 There is no evidence in this record to indicate that either of the defendants misled the plaintiff at any time or performed any act designed to defeat the plaintiff of any commission. Mr. Richards could not be held in tort for the reason that he had just ground to believe that the negotiations between him and the plaintiff were terminated when his offer to purchase was in effect rejected.
 

 For the reasons assigned, the judgment of the lower court is affirmed at appellant’s cost.