KINNEAR–WEED CORP.

v.

HUMBLE OIL & REFINING CO.

No. 14777.

United States Court of Appeals Fifth Circuit.

July 21, 1954.

Homer T. Bouldin, Houston, Tex., William E. Kinnear, Beaumont, Tex., for appellant.

Nelson Jones, Houston, Tex., B. D. Orgain, Beaumont, Tex., Melvin F. Fincke, Walter B. Morgan, Garrett R. Tucker, Jr., Frank B. Pugsley, Houston, Tex., for appellee. Orgain, Bell & Tucker, Beaumont, Tex., Baker, Botts, Andrews & Shepherd, Rex G. Baker, Houston, Tex., of counsel.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

RIVES, Circuit Judge.

The complaint was based upon five separate claims: (1) infringement of patents, (2) violation of a confidential relationship, (3) unjust enrichment, (4) unfair competition, (5) for the recovery of threefold damages [1] for violation of Section 2 of the Sherman Act.[2] Upon this appeal we are concerned only with the last claim, the one for violation of the antitrust or monopoly laws. That claim was presented by paragraph 12 of the complaint.[3] The district court sustained the defendant's motion to strike said paragraph 12, and, pursuant to Rule 54(b), Federal Rules of Civil Procedure,[4] the court determined "that since Paragraph 12 presents a claim for relief separate and apart from the other claims presented in plaintiff's complaint, there is no just reason for delay in having a final decision made as to whether the allegations in said Paragraph 12 state a claim for treble damages under Section 15, Title 15, U.S.C.A.", and directed the entry of a final judgment from which this appeal is prosecuted.

■ If the evidence sustains the plaintiff's [5] averments on its first four claims, the plaintiff can recover all of the actual damages to which it is entitled. In its claim for treble damages in paragraph 12, the plaintiff seeks a windfall on account of an alleged violation of the antitrust laws. The main purpose of those laws was to protect the public from monopolies and restraint of trade, and the private right of action for treble damages was incidental and subordinate to that main purpose. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, 889. The grant of a claim for treble damages to persons injured was for the purpose of multiplying the agencies which would help enforce the antitrust laws and therefore make them more effective. Maltz v. Sax, 7 Cir., 134 F.2d 2, 4. The very foundation of the right of a private suitor to recover "threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee" is the violation of public rights prohibited by the Act and, indeed, made criminal offenses. 15 U.S.C.A. §§ 1, 2 (see footnote 2, supra).

■ Public injury alone justifying the threefold increase in damages and being an indispensable constituent of a claim

1. 15 U.S.C.A. § 15.—"*Suits by persons injured; amount of recovery.* Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

2. 15 U.S.C.A. § 2.—"*Monopolizing trade a misdemeanor; penalty.* Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

3. Paragraph 12 of the complaint is annexed as an appendix to this opinion.

4. Rule 54(b), Federal Rules of Civil Procedure, 28 U.S.C.A.:
   "*Judgment Upon Multiple Claims.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

5. For convenience, the parties will be referred to simply as plaintiff and defendant.

for violation of the antitrust laws, a general allegation of such injury is not sufficient. It is essential that the complaint allege facts from which it can be determined that the conduct charged to be in violation of the antitrust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce. Apex Hosiery Co. v. Leader, 310 U.S. 469, 493, 60 S. Ct. 982, 84 L.Ed. 1311; Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 174, 35 S.Ct. 398, 59 L.Ed. 520; Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519, 522; Dublin Distributors, Inc. v. Edward & John Burke Limited, D.C.S.D. N.Y., 109 F.Supp. 125, 127; National Used Car M. Report v. National Auto D. Ass'n, D.D.C., 108 F.Supp. 692, 694; Bader v. Zurich General Accident & Liability Ins. Co., D.C.S.D.N.Y., 12 F.R.D. 437, 439.

■ The averment of public injury in paragraph 12 of the complaint is a bare conclusion of the pleader: "And that such acts and conduct by defendant in attempting to, and by, establishing and maintaining such a monopoly has resulted in prejudicial consequences to the public interest whereby the public interest has been injured." It is true that the conduct charged to the defendant was in fact antagonistic to the purpose of the patent laws, and that that purpose is a public purpose, "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries", Constitution Art. I, § 8, Clause 8. That, however, is not the kind of public purpose protected by the antitrust laws, which are designed instead to protect the free flow of interstate commerce. Indeed, to an extent the two purposes conflict. But for the beneficent purpose of encouraging invention, the limited monopoly granted by a patent might itself be contrary to the spirit of the antitrust laws. It is significant also that, while violations of the antitrust laws have been made criminal offenses, Congress has not declared patent infringement even willfully committed, to constitute a crime. Every fact averred in paragraph 12 of the complaint might be true, and yet the inventions or improvements of drilling bits or drills covered by the plaintiff's patents might not have been restrained from the free flow of interstate commerce. Indeed, for aught that appears, the defendant's conduct may have increased the flow of such products in commerce.

Paragraph 12 of the complaint is fatally defective because it alleges no facts which show injury to the public. It is not necessary to decide whether it is defective in the several other particulars urged by the defendant.[6]

The allegations of paragraph 12 have no proper place in the trial or disposition of the other claims upon which the suit is based, and might serve to prejudice the defendant or to prolong the trial. The district court did not err, therefore, in sustaining the defendant's motion to strike paragraph 12.[7]

Affirmed.

### Appendix.

Paragraph 12 of the Complaint:

"That defendant is one of the largest producers of oil in the United States and engages in interstate commerce on a big scale in the drilling, production and sale of petroleum products in that it transports oil well drilling equipment and oil and gas storage equipment in the regular course of its usual business, and transports and has transported, oil and other petroleum products by truck, railroad and pipe lines from the State of Texas to various other states and sections of the United States, and from other states to various other sections of the United States, and sells oil and other petroleum products in a number of states, the exact

6. Such as that it alleges no injury to any business or property of plaintiff, that a patent is not trade or commerce within the meaning of the Sherman Act, that it is legally impossible to monopolize a patent in violation of the Sherman Act.

7. See 2 Moore's Federal Practice, 2nd ed., Sec. 12.21, pp. 2312, et seq.

number not being known to plaintiff, and often drills oil and gas wells in at least several states of the United States. That defendant by reason of its great volume of oil well drilling equipment, including drills or drilling bits, which it purchases, the economic position of oil well drilling equipment manufacturers is greatly affected by the distribution of defendant's patronage. That defendant has had a policy for the past several years of sending its engineers, who have been under contract with defendant to assign their inventions and applications for Letters Patent to the Standard Oil and Development Co., a Delaware Corporation, which is a research and development Company, or to defendant, out to various manufacturers of oil well drilling and completion equipment and by representing that defendant wishes to evaluate and compare said equipment, in order to determine whether defendant wishes to use same in the drilling and controlling of its oil wells. That defendant represented that such information received would be held in confidence. That defendant then uses such information in its standards and specifications in its universal system of purchasing oil well drilling and control equipment, and in its engineering reports. That in determining what equipment is to be used by defendant in its purchasing and use of oil well equipment defendant considers only what equipment is most suitable for defendant's needs and the price of same. That defendant does not consider whether said equipment which it has taken in confidence from said manufacturers is patented or unpatented, and does not consider or give credit to the inventor or discoverer of such patented equipment. Defendant sends out its standards and specifications and engineering reports, which it keeps current. and which includes descriptions of the equipment received in confidence from such manufacturers, without any recognition of patent rights and without any restrictions or limitations relative to the manufacture, sale or use of such patented equipment. That defendant has so embodied the inventions or improvements covered by plaintiff's patent in this action. That defendant has represented by its advertising in its own publication and by articles in its own and other publications which have been sent out in interstate commerce to various parts of the United States by mail that defendant is the discoverer or inventor of the drills or drilling bits, the inventions or improvements included and covered by plaintiff's patents in this action.

"That defendant has wrongfully represented to manufacturers of oil well drilling equipment that defendant is the inventor or discoverer of said drills or drill bits which are the subjects of plaintiff's patents in this action and has caused manufacturers to manufacture said drills or drilling bits for defendant according to the standards and specifications of defendant and to sell same to defendant, and defendant has used same in the drilling of many of its oil and gas wells. That defendant by its wrongful appropriation and domination of said improvements or inventions which are the subjects of and are covered by plaintiff's patents has been wrongfully conducting itself by said acts of wrongful appropriation and domination and control of said improvements or inventions covered by plaintiff's patents in this action and that such conduct of defendant was for the purpose of monopolizing the inventions or improvements covered by plaintiff's patents in this action.

"That defendant did willfully conduct itself as aforesaid with the intent to appropriate, dominate and control said improvements or inventions covered by, and which are the subjects of plaintiff's patents in this action and thus did attempt to have a monopoly on said improvements or inventions which are the subject of plaintiff's patents in this action. And that by such wrongful conduct defendant has to a large extent hindered and prevented plaintiff and plaintiff's predecessors in right, title and interest in said patents from controlling and enjoying the benefits of same as is provided by law, including the right to grant licenses upon a

fair and just basis without wrongful interference and hindrance by defendant as aforesaid in so doing. That defendant by its wrongful conduct as aforesaid has restrained and prevented plaintiff and plaintiff's predecessors in right, title and interest in said improvements or inventions, in fully benefiting and enjoying rights granted by the United States Government in said patents.

"Defendant has followed a course of conduct with the intent and purpose of establishing and maintaining its monopolistic control of said improvements or inventions in commerce among the several states or in interstate commerce, and has substantially succeeded in doing so. And that such acts and conduct by defendant in attempting to, and by, establishing and maintaining such a monopoly has resulted in prejudicial consequences to the public interest whereby the public interest has been injured. And that plaintiff's predecessors in rights, title and interest in said improvements or inventions and in said Letters Patents and plaintiff, have suffered damages proximately resulting from the acts and conduct of defendant which constitute the violations of the monopoly or antitrust laws of the United States of America.

"That said acts of defendant were and are in violation of the antitrust laws of the United States. That during the entire period of said acts of misconduct by defendant which were in violation of said antitrust or monopoly laws the defendant had, and now has, an agent in Jefferson County, Texas, and agents in other places in the district of the United States District Court for the Eastern District of Texas, Beaumont Division. That as a result and proximate cause of the wrongful acts of defendant in attempting to, and substantially monopolizing said improvements or inventions which are the subjects of plaintiff's patents in this action as alleged aforesaid the value of said improvements or inventions the subject of said patents and the said patents of plaintiff's in this action were substantially destroyed to plaintiff's and plaintiff's predecessors in right, title and

interest in and to said inventions or improvements and said patents of plaintiff in this action in the sum of Twenty-five Million Dollars, ($25,000,000.00)."