Victor N. **ALEXANDER**

v.

The **TEXAS COMPANY.**

Civ. A. 5432.

United States District Court
W. D. Louisiana,
Shreveport Division.

March 1, 1957.

Malcolm E. Lafargue, Shreveport, La., for plaintiff.

John T. Guyton, Hargrove, Guyton, Van Hook & Hargrove, Shreveport, La., Jack D. Childers, Houston, Tex., A. B. Steed, New York City, for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

The suit is brought under 15 U.S.C.A. § 15. Plaintiff, a former service station dealer in Texaco products, seeks to recover treble damages from defendant totaling $63,696.72, plus an attorney's fee of $21,232.24, upon general allegations that defendant has violated the antitrust laws. The actions complained of allegedly occurred during a gasoline "price war" which began in the Shreveport-Bossier City, Louisiana, area on August 12, 1955. Plaintiff avers that he sustained losses, because of defendant's conduct, in four respects:

1. He sues for $1,818.18 (untrebled) as damage he is said to have sustained on account of defendant's allegedly unlawful price discrimination, in favor of other Texaco dealers, in violation of Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(a);

2. He sues for $1,057.26 (untrebled) as damage he is said to have sustained because of defendant's allegedly conspiratorial price-fixing, in league with other Texaco dealers, in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1;

3. He sues for $12,000 (untrebled) as damage he is said to have sustained because of defendant's allegedly unlawful termination of his service station lease in violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2; and,

4. He sues for $6,356.80 (untrebled) as damage he is said to have sustained because of defendant's allegedly wrongful acts in inducing a "prospective buyer" not to purchase his service station stock and equipment, following termination of his lease, in violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2.

His complaint does not categorize the sections of the antitrust laws upon

which his claims are based, but it is plain that he must rely upon those cited.

Defendant has moved to dismiss the complaint for failure to state a claim upon which relief may be granted, and also for summary judgment. The motion to dismiss is directed against the claims for damages on account of alleged price discrimination and conspiratorial price-fixing; and the motion for summary judgment is levelled at the remaining claims. Defendant also has moved to strike certain allegations from the complaint, and for a more definite statement.

■ We shall consider these matters seriatim. In doing so, we must follow the more recent federal jurisprudence which uniformly holds that the liberal attitude of Rule 8(a), Fed.Rules Civ. Proc., 28 U.S.C.A., as to notice pleadings, should not be applied in antitrust actions, and that all essential ultimate facts must be plainly detailed. Conclusions of fact or law are not enough to state a claim upon which relief may be granted. Kinnear-Weed Corporation v. Humble Oil & Refining Company, 5 Cir., 214 F. 2d 891, 893, certiorari denied 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715; Crummer Co. v. Du Pont, 5 Cir., 223 F.2d 238, 244; Beegle v. Thomson, 7 Cir., 138 F.2d 875, 881, certiorari denied 322 U.S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576; Shotkin v. General Electric Company, 10 Cir., 171 F.2d 236, 238; Bader v. Zurich General Accident & Liability Insurance Company, D.C., 12 F.R.D. 437, 438; Dublin Distributors, Inc., v. Edward & John Burke, D.C., 109 F.Supp. 125, 126.

Approaching the case with those principles in mind, we make the following findings:

## 1

### Price Discrimination

At Articles 12, 13, 14 and 15 of the complaint, plaintiff has attempted to allege "price discrimination" by defendant, and anti-competitive consequences to his business, in violation of the Robinson-Patman Act, but we do not believe he has succeeded in doing so. In sum, all he actually asserts is that, between August 12, 1955, and November 18, 1955, because he would not subscribe to defendant's "Chicago Plan", by writing a "letter" requesting price assistance from defendant in the price war then going on, he was forced to pay $.0365 more per gallon of gasoline than were twelve other local retail dealers in Texaco products, as the result of which he sold a somewhat smaller gallonage than he had been selling, and made that much less profit per gallon. He does not allege any ultimate facts showing how this price difference amounted to a true price discrimination under the Robinson-Patman Act.

■ That statute prohibits price discrimination only where it has produced one or more of the three anti-competitive consequences it is intended to prevent. The effect of the alleged discrimination must be 1) substantially to lessen competition, or 2) tend to create a monopoly, or 3) to injure, destroy or prevent competition among sellers, buyers or their customers. Balian Ice Cream Co. v. Arden Farms Co., 9 Cir., 231 F.2d 356, 357, and authorities therein cited.

■ It is perfectly clear that the results of defendant's alleged price discrimination did not fall within the first or second of these categories. This Court judicially notices, and the record shows, that plaintiff was merely one of nineteen Texaco dealers in the Shreveport-Bossier City area between August 12, and November 18, 1955. At that time there also were more than 200 other gasoline service stations, handling many competitive brands of petroleum products, in the area. Whatever consequences the alleged price discrimination may have had upon plaintiff's business would have been almost infinitesimal in their effect upon the over-all service station business of the area; and any such small-scale discrimination could not 1) have substantially lessened competition in interstate commerce or 2) have tended to create a monopoly of such commerce in the area, within the meaning of the statute.

It is possible, although not shown by the complaint, that defendant's alleged price discrimination may have come within the third category by injuring, destroying or preventing competition between plaintiff and the twelve dealers who are said to have been given cheaper prices. Plaintiff has not alleged that this was so.

All he has done is to level a broad charge against defendant that it was guilty of "price discrimination"—a mere legal conclusion—in that he had to pay more for gasoline than did the twelve other Texaco dealers named, but he does not allege in detail, as he must, how or to what extent the difference in price injured, destroyed or prevented competition between his business and that of any or all of the favored dealers.

█ Moreover, any loss he may have sustained would not be measured by the "discrimination" of $.0365 per gallon of gasoline. Rather, the true yardstick of his damages, if any, in this respect would be the gross loss of profit on sales he otherwise would have made to those customers who bought from the favored dealers, instead of from plaintiff, because of the price differential. Enterprise Industries, Inc., v. Texas Company, 2 Cir., 240 F.2d 457, and authorities therein cited.

As stated, plaintiff makes no factual allegations that he sustained any loss of business to those dealers and he likewise does not take into account any losses which may have occurred by reason of his customers patronizing the many other service stations participating in the general price war. Neither does he allege whether he passed on any part or all of the "discrimination" in the retail prices he charged to those customers who actually bought from him during the period involved; nor does he allege whether he absorbed any part or all of the price difference. Inferentially, at Article 15 of his complaint, he indicates that he absorbed the entire price difference, in alleging that his margin of profit was diminished to that extent, but this is far from clear.

█ In addition, plaintiff does not attempt to define, as he must, what he contends is the so-called Shreveport-Bossier City trade area or to show, as he must, that at the time of the "discrimination", he actually was in competition with any one or all of the favored dealers, most of whose businesses were located miles away from his station. The mere possibility that there was competition between his business and theirs is not enough. Such competition must be clearly shown. Enterprise Industries, Inc., v. Texas Company, supra. For aught that appears, since his station was located in a residential district in Shreveport, it might have served, in its usual business, only a relatively small area in its immediate vicinity, without actually being in true competition with any of the favored dealers.

At Article 13 of his complaint, plaintiff alleges that, under his lease and sales contracts with defendant, he could not obtain an agency for the sale of other petroleum products during the period involved because the contracts required him to handle defendant's products exclusively. Evidently he makes this allegation in an effort to excuse himself from failure to mitigate his alleged damages. This is a conclusion not borne out by the contracts themselves, which he has attached to his complaint and which are completely silent on the subject of exclusiveness.

█ Having alleged only generalities and legal conclusions, in the language of the statute, plaintiff has failed to state a claim for damages, on account of price discrimination, upon which relief may be granted. Lipson v. Socony-Vacuum Corporation, 1 Cir., 76 F.2d 213, 217; National Used Car Market Report, Inc., v. National Auto Dealers Association, D.C., 108 F.Supp. 692, 694.

## 2

### Conspiratorial Price-Fixing

█ At Article 16 of his complaint, plaintiff alleges that defendant, in violation of the antitrust laws, acted in con-

cert and conspiracy with "other retail dealers" (presumably those allegedly favored by defendant with price assistance) in fixing "maximum" retail prices of gasoline, as the result of which he was damaged, in that he was prevented from making sales, during the period from August 12, 1955, to November 18, 1955, of "at least 17,786 gallons of gasoline", upon which he would have made a profit of $1,057.26. He claims treble that amount from defendant.

As presently presented, this claim is defective, among other reasons, because a) there are no facts alleged which show that there was such a conspiracy and b) there are no facts alleged which show that an injury occurred to the public interest as the result of the conspiracy.

It is true that, at Article 20 of his complaint, plaintiff alleges that this (and the other acts of defendant complained of) " * * * is an endeavor to eliminate competition and to gain a monopoly on the service stations in said trade area, that it has eliminated petitioner as a competitor, [Plaintiff's deposition refutes this. He almost immediately became a Conoco dealer.] that it has forced petitioner from his business and that in addition the interest of the general public in said community has been or will be affected by reason thereof". This is not enough.

The Fifth Circuit Court of Appeals has settled these points in no uncertain language. In Nelson Radio & Supply Company v. Motorola, Inc., 200 F.2d 911, 913, certiorari denied 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356, the Court said:

" * * * It is the well recognized rule that in pleading a conspiracy in an [antitrust] action such as this, a general allegation of conspiracy, without a statement of the facts constituting the conspiracy to restrain trade, its object and accomplishment, is but an allegation of a legal conclusion, which is insufficient to constitute a cause of action. Black & Yates v. Mahogany Association, 3 Cir., 129 F.2d 227, 148 A.L.R. 841; Neumann v. Bastian-Blessing Company, D.C., 70 F.Supp. 447, 448."

In Crummer Company v. Du Pont, 5 Cir., 223 F.2d 238, 245, Chief Judge Hutcheson, speaking for the Court, said:

" * * * Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference, as here, trifles light as air, to the suspicious strong as proofs from Holy Writ, will suffice * * *."

See also, to the same effect, Hudson Sales Corporation v. Waldrip, 5 Cir., 211 F.2d 268; Fedderson Motors, Inc., v. Ward, 10 Cir., 180 F.2d 519.

In the Waldrip case [211 F.2d 271], Judge Hutcheson emphasized that the decisions:

" * * * have firmly established the principle that an essential to a private recovery is a showing of a public injury."

In Kinnear-Weed Corp. v. Humble Oil & Refining Company, 5 Cir., 214 F.2d 891, 893, Judge Rives, as the organ of the Court, stated:

"Public injury alone justifying the three-fold increase in damages and being an indispensable constituent of a claim for violation of the antitrust laws, a general allegation of such injury is not sufficient. It is essential that the complaint allege facts from which it can be determined that the conduct charged to be in violation of the antitrust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce.",

citing numerous decisions, including two by the Supreme Court.

We have noted also, in this connection, Schwing Motor Company v. Hudson Sales Corporation, D.C., 138 F.Supp. 899, aff. *per curiam*, 4 Cir., 239 F.2d 176. That case held, *inter alia*, that only a "horizontal" conspiracy between competitors at the same level, not a "vertical" conspiracy between a manufacturer-dis-

tributor and its retail dealers as is here alleged, is proscribed by the Sherman Act; and that in those decisions which have held a "vertical" conspiracy to be prohibited, the manufacturer-distributor occupied a "dominant" position in the trade area, which defendant here certainly does not do.

Accordingly, we find that plaintiff has failed to state a valid claim for damages, on account of the alleged conspiratorial price-fixing, upon which relief may be granted.

### 3

### Unlawful Cancellation of Lease

At Article 18 of his complaint, plaintiff alleges that on October 19, 1955, defendant cancelled his service station lease for no other reason than his refusal to write "the letter" requesting assistance in the price war (in his deposition, he merely "presumes" or "assumes" that this was the reason); that because of this unwarranted, capricious and arbitrary action by defendant he was forced to give up the service station on November 18, 1955, losing " * * * his good will in a location where he had been established for the past twenty-one years * * * ", as the result of which he was damaged to the extent of $12,000 (untrebled), for which he sues defendant.

The lease, a duplicate original of which is attached to the complaint, was dated November 7, 1951, and contained the following pertinent clause:

"(2)—Term. This lease shall remain in full force and effect for a period of one (1) year beginning November 9, 1951, and ending November 8, 1952, and thereafter from year to year, subject to termination by either party at the end of the first year or any subsequent year on ten (10) days' prior written notice; * * * "

It is obvious from this proviso that unless plaintiff in some way adequately can connect the lease termination with a violation of the antitrust laws, defendant had a perfect contractual right to cancel it, and is not liable for damages on that account.

Plaintiff makes no allegation that the lease cancellation was directly or indirectly involved in the alleged conspiracy between defendant and the twelve favored Texaco dealers. Indeed, he alleges nothing in this respect from which a reasonable conclusion could be drawn that defendant violated any of the antitrust laws.

Even if this article of the complaint is read in connection with all other articles, particularly Article 20, which attempted, but failed (as shown above), adequately to allege a conspiracy, price discrimination, monopolistic efforts or public injury, still this claim, as now asserted, must fall for the same failure to make sufficient factual allegations showing that such antitrust violations actually were intended, attempted or committed by defendant.

It is clear that a simple "refusal to deal" is not proscribed by Section 1 of the Sherman Act. Times Picayune Publishing Company v. United States, 345 U.S. 594, 625, 73 S.Ct. 872, 97 L.Ed. 1277; United States v. Colgate & Company, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992; Nelson Radio & Supply Company v. Motorola, Inc., 5 Cir., 200 F.2d 911, 915, certiorari denied 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356. A unilateral "refusal to deal" always is permissible except where actual monopoly, or intent to monopolize, exists, Nelson Radio & Supply Company v. Motorola, Inc., supra; Hudson Sales Corporation v. Waldrip, 5 Cir., 211 F.2d 268, certiorari denied 348 U.S. 821, 75 S.Ct. 34, 99 L.Ed. 648; and a bilateral refusal is prohibited only where there is concerted action by those who are true "competitors". Hudson Sales Corporation v. Waldrip, supra; Times Picayune Publishing Company v. United States, supra; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 213, 71 S.Ct. 259, 95 L.Ed. 219. It also must be shown that such concerted, or bilateral, refusal unduly affects interstate commerce. Interborough News Company v. Curtis Publishing

Company, 2 Cir., 225 F.2d 289. It would be ridiculous to characterize defendant as a "competitor" of its retail dealers, such as those who allegedly were favored here; and there is no allegation, or other showing, that the lease cancellation affected interstate commerce in any degree.

It is only where an actual monopoly or a specific intent to monopolize has been properly pleaded that a unilateral refusal to deal constitutes a violation of Section 2 of the Sherman Act. Nelson Radio & Supply Company v. Motorola, Inc., supra; Hudson Sales Corporation v. Waldrip, supra. There is no adequate allegation of a monopoly or intent to monopolize anywhere in the complaint, and the documents on record show that such a charge would not be true, even if properly alleged.

 When the lease was cancelled, defendant did not attempt to take over and operate the service station, but immediately re-leased it to another dealer, Ray Stump. At that time there were at least eighteen other Texaco dealers, and more than 200 unrelated dealers handling numerous competing gasoline brands, in the Shreveport-Bossier City area. Plaintiff himself reopened as a Conoco dealer at another location in Shreveport within less than four months. These undisputed facts show that defendant could not, did not, and cannot monopolize or unreasonably restrict competition in the service station business in this area. Monopolization under Section 2 means monopoly in the economic sense—"power * * * to raise prices or to exclude competition when it is desired to do so". American Tobacco Company v. United States, 328 U.S. 781, 811, 66 S.Ct. 1125, 1140, 90 L.Ed. 1575; United States v. E. I. Du Pont, 351 U.S. 377, 380, 393, 76 S.Ct. 994, 100 L.Ed. 1264. The price, quality or quantity of gasoline available to the motoring public was not, and could not have been, affected by defendant's termination of plaintiff's lease; and it would be sheer nonsense to say that defendant terminated the lease " * * * in an endeavor to eliminate competition and to gain a monopoly on the service stations in said trade area", as is spuriously claimed by plaintiff.

Finally, plaintiff has not alleged any recoverable damage proximately resulting from this alleged antitrust violation. The damages he claims, as shown by his deposition, are computed on the basis of alleged profits he anticipated realizing through continued operation of the service station over a three-year period. Necessarily, this assumes a legal right which did not exist, for by the terms of the lease defendant legally could have cancelled it at the end of any lease-year, as was done. Consequently, the damages he claims for this are purely speculative and are not founded upon any enforceable right. Cf. A. J. Goodman & Son v. United Lacquer Manufacturing Corporation, D.C.Mass., 81 F.Supp. 890, 893.

Therefore, defendant's motion for summary judgment as to this claim, in its present status, must be Granted.

### 4

### Prevention of Stock and Equipment Sale

At Article 19 of his complaint, plaintiff alleges that it is customary in the trade, when a dealer gives up a service station, that he sell his stock and equipment to his successor; that upon cancellation of his lease he was negotiating with a buyer to purchase his stock and equipment, but that this prospective buyer would not go through with the purchase because defendant threatened him with refusal to lease the station if he bought from plaintiff; that, consequently, plaintiff was unable to sell it and lost its entire value of $6,356.80 (untrebled), for which defendant is liable to him.

In his deposition, plaintiff admitted that defendant simply was acting in this transaction as a " * * * go-between the out-going dealer and the in-coming dealer to see that neither one of them takes advantage of the other". Both his complaint and his deposition show that plaintiff did not have a firm contract with the "prospective buyer", but simply

hoped to sell his stock and equipment to him.

Like refusals to deal or sell, unilateral refusals to buy are not prohibited by Section 1 of the Sherman Act. F. T. C. v. Raymond Brothers, 263 U.S. 565, 573, 44 S.Ct. 162, 68 L.Ed. 448. Refusals to buy, like refusals to sell, violate Section 1 only where there is a group boycott or concert of action between horizontal competitors. Here, by plaintiff's own admission, defendant acted simply as a "go-between" or agent for either plaintiff or the prospective buyer, or for both. No matter who defendant was representing, the legal consequence is the same. If defendant was representing plaintiff as his agent, then defendant's actions were his actions, and he has no valid complaint under Section 1, for, as stated in Nelson Radio & Supply Company v. Motorola, Inc., supra, a person "cannot conspire" with himself.

On the other hand, if defendant was acting as the prospective buyer's agent, still, there could be no conspiracy under Section 1, because a principal cannot conspire with his agent. Motorola, supra.

Moreover, the prospective buyer and defendant were not "competitors", horizontal or otherwise, engaged in purchasing service station stock and equipment, and there could be no "contract, combination, or conspiracy" under Section 1. Plaintiff admitted in his deposition that defendant was not in the business of buying service station equipment.

Plaintiff has cited no decisions holding that a unilateral refusal to buy violates the monopoly provisions of Section 2 of the Sherman Act, and we have found no cases to that effect. In any event, as stated, the complaint does not allege, and plaintiff does not contend that defendant was in the business of buying stock and equipment. Consequently, it could not and did not monopolize any part of that business, so as to have violated Section 2.

In addition to these considerations, as already pointed out, plaintiff generally has failed to allege any ultimate facts which validly show 1) a conspiracy to restrain trade or competition, 2) a monopoly or intent to monopolize, or 3) any public injury, with respect to this or any other item of alleged damage. Likewise, it is plain that interstate commerce was not, and could not have been affected by defendant's alleged conduct. Myers v. Shell Oil Company, D.C., 96 F.Supp. 670.

Even if plaintiff had held a firm contract with the prospective buyer to purchase his stock and equipment, and defendant induced a breach of such contract, he could not recover ordinary tort damages from defendant on that account under Louisiana law. Moulin v. Monteleone, 165 La. 169, 115 So. 447, Latter & Blum v. Metropolitan Life Insurance Company, 208 La. 490, 23 So.2d 193.

Consequently, defendant's motion for summary judgment as to this claim, in its present status, must be Granted.

## Conclusions

For the reasons given, defendant's motion to dismiss will be granted as to claims for damage on account of alleged price discrimination and conspiratorial price-fixing; and its motion for summary judgment will be granted as to the claims for damages on account of the allegedly unlawful cancellation of plaintiff's lease, and the prevention of the proposed stock and equipment sale. Because plaintiff may be able to correct some, or all, of the faults in his case, as herein noted, leave is granted to file a supplemental or amended complaint within thirty days. Because of these rulings, we deem it unnecessary to pass upon defendant's motions to strike and for a more definite statement.

Thus Done and Signed, in Chambers, in Shreveport, Louisiana, this 1st day of March 1957.