ARZEE SUPPLY CORP. OF CONN.,
Plaintiff,

v.

The RUBEROID CO., Fairfield Reserve
Supply, Inc., Joseph N. Klaff Lumber
& Supply Co., Inc., Defendants.

Civ. No. 9211.

United States District Court
D. Connecticut.

July 10, 1963.

Robert B. Seidman, of Vogel, Sigsway, Seidman & Harris, Norwalk, Conn., for plaintiff.

John D. Fassett, of Wiggin & Dana, New Haven, Conn., and Cyrus Austin, of Austin, Burns, Appell & Smith, New York City, for defendant Ruberoid Co.

Samuel R. Dorrance, of Hawthorne, Ackerly & Dorrance, New Canaan, Conn., for defendant Fairfield Reserve Supply, Inc.

Robert A. Slavitt, of Slavitt & Connery, Norwalk, Conn., for defendant Joseph N. Klaff Lumber & Supply Co., Inc.

TIMBERS, District Judge.

This is an antitrust action brought under Section 4 of the Clayton Act [1] to recover treble the damages allegedly sustained by plaintiff from violation by defendants of Sections 1 and 2 of the Sherman Act.[2]

Defendants, pursuant to Rule 12(b) (6), Fed.R.Civ.P., have moved, before answering, for dismissal of the action on the grounds that the complaint fails to state a claim against defendants upon which relief can be granted and further fails to state a claim for damages proximately resulting from the alleged acts of defendants.

Defendants' motion to dismiss the action is granted.

## I

### ALLEGATIONS OF COMPLAINT

The amended complaint [3] alleges that plaintiff (ARZEE), of Norwalk, Connecticut, is engaged in the business of selling roofing materials and building supplies at retail in Connecticut and New York. Defendant Ruberoid Co. (RUBEROID), of New York, manufactures and sells in interstate commerce a certain type of roofing material, known as Ruberoid, "having certain exclusive features". Defendant Fairfield Reserve Supply, Inc. (FAIRFIELD), of Norwalk, is a distributor of building materials, including roofing materials, to various lumber yards and building supply houses which in turn sell to customers in Connecticut and New York. Defendant Joseph N. Klaff Lumber and Supply Co., Inc. (KLAFF), of Norwalk, is engaged

---

1. 15 U.S.C. § 15.

2. 15 U.S.C. §§ 1–2.

3. Filed July 7, 1962 in response to defendants' original motion and supporting brief (both filed April 19, 1962) to dismiss for failure to state a claim upon which relief could be granted.

in selling building materials, including roofing materials, at retail to customers in Connecticut and New York.

It is further alleged that, whereas ARZEE, FAIRFIELD and KLAFF were purchasers of Ruberoid material from RUBEROID prior to May 1, 1961, FAIRFIELD and KLAFF, on or about May 1, 1961, "together with others to plaintiff unknown" conspired "to prevent plaintiff from exercising its lawful trade and business by preventing plaintiff from buying at wholesale and thereafter selling at retail * * * Ruberoid manufactured by the defendant The Ruberoid Co." [4]

The object of the conspiracy is alleged to be the elimination of competition between and among defendants FAIRFIELD and KLAFF and plaintiff and the maintenance of "unreasonably high, excessive, monopolistic and non-competitive prices for Ruberoid."

The amended complaint alleges the following specific acts in furtherance of the alleged conspiracy: FAIRFIELD and KLAFF, "by means of persuasion, coercion, and threats of boycott to the defendant Ruberoid Co. * * * endeavored to restrain, obstruct and cut off supplies of Ruberoid * * * to the plaintiff"; RUBEROID, "with knowledge of the conspiracy aforesaid and as a result of said persuasion, coercion and threats of boycott, cut off and refused to sell to plaintiff" any Ruberoid material and took back certain supplies of Ruberoid already delivered to plaintiff.

Plaintiff alleges that, as a result of the conspiracy, it has been cut off from supplies of Ruberoid, has been unable to sell Ruberoid and has suffered a loss in profits and damages to its business in amount of $50,000. Plaintiff demands treble damages, costs and a reasonable attorney's fee.[5]

## II

## RUBEROID

██ The general principles applicable to the present action may be set forth briefly. The mere refusal to sell on the part of a manufacturer, when such refusal is the result of his independent discretion as to parties with whom he will deal, is not within the purview of the antitrust laws. United States v. Parke, Davis & Co., 362 U.S. 29, 44, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6 Cir. 1963), cert. denied, 375 U.S. ——, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963). A unilateral refusal to sell becomes illegal only where a monopoly or intent to monopolize exists. Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951); Nelson Radio & Supply Co. v. Motorola, Inc., 200 F. 2d 911 (5 Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953). Bilateral refusals are prohibited only where there is concerted action by those who are true competitors. Alexander v. Texas Company, 149 F.Supp. 37 (W.D.La.1957). Such bilateral refusals furthermore are not prohibited unless they unduly affect interstate commerce. Interborough News Co. v. Curtis Publishing Co., 225 F.2d 289 (2 Cir. 1955). Certain practices (e. g. tying agreements, division of markets between competitors, group boycotts and price fixing, both vertical and horizontal) have been held to be per se violations of the antitrust laws. See White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963). Absent such per se violations, an unlawful monopoly exists whenever one person, or group of persons acting jointly or by conspiracy, has the power to exclude actual or potential competition from a field and has the purpose to exercise that power. United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948); United

---

**4.** The Court treats as surplusage the references in the amended complaint to gypsum companies and gypsum products since there are no allegations that plaintiff was prevented from purchasing such products, or that U. S. Gypsum Co. or National Gypsum Co. refused to sell such products, or that any damage resulted to plaintiff in this connection.

**5.** 15 U.S.C. § 15.

States v. Columbia Steel Co., 334 U.S. 495, 68 S.Ct. 1107, 92 L.Ed. 1533 (1948).

▓▓▓ Applying these principles to the well pleaded material allegations of the complaint which are deemed admitted,[6] the Court holds that the amended complaint fails to state a claim against RUBEROID.

Paragraph 12 alleges that RUBEROID " * * * with knowledge of the conspiracy aforesaid, and as a result of said persuasion, coercion and threats of boycott, cut off and refused to sell to the plaintiff any Ruberiod * * * and took back * * * certain supplies of Ruberoid already delivered to plaintiff." Plaintiff does not allege that RUBEROID was a member of the conspiracy. RUBEROID contends that this averment, without more, indicates a natural monopoly not prohibited by the Sherman Act.

Plaintiff urges, however, that the persuasion, coercion and threats of boycott on the part of the conspiring retailers deprived the manufacturing wholesaler of the "independent discretion" necessary for a natural monopoly, relying primarily upon Flintkote Co. v. Lysfjord, 246 F.2d 368 (9 Cir. 1957), cert. denied, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957). In Flintkote, the court stated (p. 376):

"Where there has been proof (a) that a conspiring group of tile dealers disclosed to a supplier, directly or by inference, an accomplished unlawful purpose and intent to boycott non-participating dealers, (and hence disclosed the existence of a conspiracy) and (b) thereafter one or more dealers had threatened the supplier on numerous occasions that they intended jointly and severally to refuse to buy from the supplier if the supplier continued to sell acoustical tile to plaintiffs, and (c) if the supplier, having been selling to non-conspirators, thereafter refused to sell to non-conspiring dealers because of the threats, it cannot be maintained, as a matter of law, that such decision not to sell was a lawful exercise of the supplier's business judgment."

At first blush the decision in Flintkote would appear to support plaintiff's position. Upon closer analysis, however, it does not. Flintkote is distinguishable from the present action in two material respects: (i) There the complaint alleged that defendant supplier was a member of the conspiracy; here there is no allegation that RUBEROID was a member of the conspiracy or that there was an agreement of any sort between RUBEROID and defendants FAIRFIELD and KLAFF.[7] The importance of this distinction is emphasized by the court in Flintkote which stated (p. 376): "It is true that one engaged in private enterprise may select his own customers, *and in the absence of an illegal agreement,* may sell or refuse to sell to a customer for good cause, or for *no cause whatever*" (emphasis added); (ii) Further, the court in Flintkote was reviewing the sufficiency of the evidence and not, as in the present action, the sufficiency of the complaint. Plaintiff in the instant case has not alleged that RUBEROID was a member of the conspiracy or that an agreement of any sort existed between RUBEROID and the other defendants. Plaintiff's reliance on Flintkote is misplaced.

▓▓▓ Both sides rely on Schwing Motor Co. v. Hudson Sales Corp., 138 F. Supp. 899 (D.Md.1956), aff'd, 239 F.2d 176 (4 Cir. 1956), cert. denied, 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957). Plaintiff cites Schwing for the proposition that if the complaint alleges a "horizontal conspiracy between competitors", it is sufficient. Having alleged a "horizontal conspiracy" between defendants FAIRFIELD and KLAFF, plaintiff argues that this allegation is sufficient to

---

6. 2 Moore's Federal Practice ¶12.08, p. 2244 (2d ed. 1962).

7. The original complaint alleged a conspiracy between RUBEROID, FAIRFIELD and KLAFF; but that allegation was dropped from the amended complaint now before the Court.

withstand a motion for dismissal as against RUBEROID. But the court in Schwing clearly was referring to a horizontal conspiracy between competitors at the same level. A conspiracy between FAIRFIELD and KLAFF does not affect RUBEROID, since there is a vertical rather than horizontal relationship between defendant RUBEROID and defendants FAIRFIELD and KLAFF. Only a horizontal conspiracy between competitors at the same level, not a vertical conspiracy between a manufacturer-distributor and its retail dealers, is proscribed by the Sherman Act. In those decisions which have held a vertical conspiracy to be prohibited, the manufacturer-distributor occupied a dominant position in the trade area. Alexander v. Texas Co., 149 F.Supp. 37, 42–43 (W. D.La.1957), citing Schwing Motor Co. v. Hudson Sales Corp., supra.

■ The amended complaint here, as in Schwing, does not allege a horizontal conspiracy between competitors, nor an effort to extend the manufacturer's natural monopoly of its own product, nor an effort to establish market dominance and drive out the products of competitors. True, the complaint does allege that the purpose of the conspiracy was "arbitrarily, unlawfully, unreasonably and knowingly [to] prevent, suppress and eliminate competition" and to "establish and maintain unreasonably high, excessive, monopolistic and non-competitive prices". But this is not enough. These are merely conclusions of the pleader. Conclusions of law are not enough to state a claim upon which relief may be granted. Alexander v. Texas Co., supra at 40, and cases cited therein; United Grocers' Co. v. Sau-Sea Foods, 150 F. Supp. 267, 269 (S.D.N.Y.1957).

Finally, no ruling on the legal sufficiency of a treble damage antitrust complaint would be complete without consideration of the leading case of Nagler v. Admiral Corporation, 248 F.2d 319 (2 Cir. 1957). Although not referred to in

the oral arguments or briefs on either side in the instant case, the Court has considered the Admiral case with care because of its obvious importance to the issues here raised. The thrust of the holding in Admiral was that " * * * we are not conducting exercises in pleading; we must look beyond the mere mountain of words to the meaning sought to be conveyed." (Id. at 325) and "It would seem therefore that the plaintiffs have set forth a prima facie case which, if proved, will force the defendants to their proof in rebuttal." (Id. at 326). In the instant case plaintiff has not alleged a prima facie case; even if everything alleged were proven, the Court would be compelled to enter judgment for defendants. Nor is this a case merely of sloppy or inartistic pleading which might be cured by amendment now or even after discovery proceedings. This is a case not merely of pleading deficiency; it is a case of an express judicial disclaimer of one of the essential elements of a violation of the Sherman Act. The missing essential element is the allegation that the defendant supplier (RUBEROID) was a member of the alleged conspiracy with the defendant dealers (FAIRFIELD and KLAFF) or that there was an illegal agreement between RUBEROID, FAIRFIELD and KLAFF. Plaintiff not only has not alleged that RUBEROID was party to a conspiracy or illegal agreement with FAIRFIELD and KLAFF; but in filing its amended complaint (in response to defendants' earlier motion to dismiss for failure to state a claim upon which relief could be granted), plaintiff dropped its allegation of a conspiracy between RUBEROID, FAIRFIELD and KLAFF and confined its conspiracy allegation to the latter two dealer defendants.[8] Having disclaimed any charge of conspiracy against RUBEROID, plaintiff has limited itself to a horizontal conspiracy between the dealer defendants. Nor is there present here, as there was in Admiral, any basis for an

8. Compare paragraph 9 of original complaint filed February 24, 1962 with paragraph 9 of the amended complaint filed June 7, 1962.

inference of conspiracy drawn from the "conscious parallelism" among defendants. (Id. at 325–326). Cf. Hathaway Motors v. General Motors Corp., 18 F.R. D. 283 (D.Conn.1955).

## III

## FAIRFIELD and KLAFF

The amended complaint alleges that FAIRFIELD and KLAFF combined together to persuade RUBEROID by means of persuasion, coercion and threats of boycott to refuse to sell to plaintiff and that these efforts were successful. These allegations, if true, constitute a restraint of trade.

Not all restraints of trade, however, are violations of the antitrust laws. Some restraints, such as exclusive agencies or dealerships or the natural monopoly of a manufacturer in his own product, are limited monopolies and do not fall within the purview of the antitrust laws unless the limited monopoly is used to extend the producer's monopoly into other fields or to establish market dominance and drive out the products of competitors. See Schwing Motor Co. v. Hudson Sales Corp., supra at 903, and cases cited therein.

Some restraints, because of their nature, are violations per se of the antitrust laws. See White Motor Co. v. United States, supra. The amended complaint in this action clearly does not allege, for example, a division of markets or a tying agreement. The amended complaint does allege that the object of the conspiracy was the maintenance of "unreasonably high, excessive, monopolistic and noncompetitive prices for Ruberoid". These allegations are conclusory. They are not sufficient to state a cause of action for price discrimination.

Nor does the amended complaint allege sufficient facts to establish the alleged conspiracy as a group boycott which is a concerted refusal by traders to deal with other traders. Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S.

207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). A group boycott is unlawful per se because it restrains the freedom of the parties to the boycott independently to decide whether to deal with the boycotted party. Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 213, 71 S.Ct. 259, 95 L.Ed. 219 (1951). The only refusal here to deal with plaintiff was on the part of RUBEROID which is not alleged to be part of the combination. A single trader refusing to deal with another does not constitute a group boycott. Klor's, Inc. v. Broadway-Hale Stores, Inc., supra at 212; Ace Beer Distributors, Inc. v. Kohn, Inc., supra.

Plaintiff relies on Johnson v. J. H. Yost Lumber Co., 117 F.2d 53 (8 Cir. 1941), for authority that its complaint against FAIRFIELD and KLAFF is sufficient to state a cause of action under the Sherman Act. Johnson is distinguishable from the present action in that the complaint there alleged a conspiracy between defendant suppliers and retailers. The court in Johnson, although dismissing the action as to the suppliers, held that conspiring dealers who, by means of persuasion, coercion and threats of boycott against manufacturers, restrain interstate commerce, are liable under the Sherman Act. But in Johnson, it is clear that the restraint involved "indispensable commodities" and that an entire market was alleged to be controlled.[9] The amended complaint here, however, fails to allege that the conduct of the conspiring dealers resulted in market control by RUBEROID, or that this conspiracy drove out the products of competitors of RUBEROID or that the refusal of RUBEROID to deal because of the combination of dealers gave RUBEROID the power to exclude actual or potential competition from the field of roofing materials within the given market. Absent an allegation of a per se violation, market control is a prerequisite for violation of the Sherman Act. Apex Hosiery Co. v. Leader, 310

---

9. See Klor's, Inc. v. Broadway-Hale Stores, Inc., 255 F.2d 214, 234 (9 Cir. 1958), rev'd other grounds, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).

U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940).

 Although unnecessary to the Court's decision (in view of its holding up to this point that the amended complaint fails to state a claim upon which relief can be granted), it may be noted that the amended complaint is fatally defective in that it does not allege facts indicating proximate causation between the alleged acts of defendants and the alleged damage to plaintiff. Glenn Coal Co. v. Dickinson Fuel Co., 72 F.2d 885 (4 Cir. 1934); Baim & Blank, Inc. v. Admiral Corp., 132 F.Supp. 412, 413 (S.D.N.Y.1955).

Plaintiff having once amended its complaint in response to defendants' original motion to dismiss for failure to state a claim upon which relief can be granted, the Court believes it would be futile to grant further leave to amend.

Accordingly, defendants' motion to dismiss the complaint as to each defendant is granted.