370 So.2d 1301 (1979)
James A. DICKERSON et al., d/b/a Dickerson Real Estate Company, Plaintiffs-Appellants,
v.
L. D. HUGHES, Defendant-Appellee.
No. 6967.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
Rehearing Denied June 6, 1979.
*1302 James G. Bethard of Bethard & Davis, Coushatta, for plaintiffs-appellants.
Gahagan & Gahagan by R. E. Gahagan, Natchitoches, for defendant-appellee.
Before WATSON, GUIDRY and FORET, JJ.
FORET, Judge.
James A. and James S. Dickerson, d/b/a Dickerson Real Estate Company (Dickerson), brought this suit to collect a real estate commission allegedly owed them by L. D. Hughes. Plaintiffs have appealed from the trial court's rejection of their demands.
Defendant, Hughes, entered into a written exclusive listing contract with Dickerson on August 1, 1977, for the sale of his residence in Natchitoches Parish, Louisiana. This contract called for a sales price of $55,000 with a 6% commission to be paid out of this to Dickerson. Approximately ninety days later Hughes validly terminated the contract with Dickerson. These facts are not in dispute.
In February, 1978, Hughes again discussed the sale of his house with the Dickersons. The substance of this discussion is in dispute. Both James A. (Jim) and James S. (Steve) Dickerson testified that Mr. Hughes came to their office requesting that they again attempt to sell his property but on the basis of a verbal non-exclusive listing with the same 6% commission if they were successful in obtaining a buyer. Mr. Hughes' version of the meeting is considerably different. He contends that ". . . on one occasion he went to see R. C. Dupree about some insurance and while he was in the building (also occupied by plaintiffs), he did merely state to Steve Dickerson that, `If you see someone interested in my house, send them to me'." (Defendant's brief, pgs. 1-2)
Shortly after this, Jim Dickerson contacted a Mr. Wayne Ivy, whom he knew to be in the market for a house and for whom he thought that the Hughes property might be suitable. Ivy was interested and made an appointment with Dickerson to see the house the following Sunday, February 26, 1978. Dickerson in turn contacted Hughes and told him that he intended to bring a prospective purchaser to see the property. That Sunday Mr. and Mrs. Ivy viewed the property in the presence of Dickerson and Mr. and Mrs. Hughes. No offer was made at this time, but later that day the Ivys discussed the purchase price of the property *1303 with Dickerson, who informed them that he believed $55,000 was as low as Hughes was prepared to go. Mr. Ivy then told Dickerson that he would have to consider the matter further.
On April 6, 1978, thirty-nine days after the initial viewing of the Hughes residence, the defendant sold the house to Ivy for $55,000. Defendant had continued negotiations with Ivy without contacting plaintiff and had, in fact, informed Ivy that plaintiff no longer had the property listed. Mr. Hughes claims that he took these actions because Dickerson had informed him the Ivys were no longer interested in the property. Dickerson denies having made any such statement asserting that he only told Hughes that the Ivys had not made up their minds as yet.
Under Louisiana law, a realtor may recover his commission without an exclusive listing agreement if he proves (1) a non-exclusive listing contract and (2) that he was the "procuring cause" of the subsequent sale. Sleet v. Williams, 291 So.2d 495 (La. App. 3 Cir. 1974).
A listing agreement need not be in writing, but its existence must be provable under Louisiana Civil Code Article 2277,[1] which requires at least one credible witness and corroborating circumstances. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977) and cases cited therein. That Mr. Hughes did come in to the Dickerson office and had a conversation with at least Steve Dickerson is not in dispute. Even assuming that defendant's version of this conversation is correct ("If you see a good prospect, send him down there."), this would be sufficient as an offer of a non-exclusive listing to Dickerson. While it was perhaps said in a somewhat casual manner, his intent, considering to whom he was speaking, is unmistakable: he was requesting the assistance of a licensed real estate broker in selling his house. He knew how such a business operated (having previously had a written exclusive listing agreement with the same party) and surely could not expect Dickerson to gratuitously "send a prospect down there".
While this office conversation may have left different impressions in the minds of plaintiffs and the defendant, when Jim Dickerson called the Hughes and told them that he was bringing over a prospective purchaser, Hughes should have then and there objected if he did not desire Dickerson's assistance. We note the testimony of Mr. Hughes at trial:
Q. "Now the Sunday that Mr. Ivy saw the house, did Jim Dickerson notify you in advance that Mr. Ivy would be coming down?
A. Mr. Dickerson called and told us that Mr. Ivy _ _ _ he was going to bring Mr. Ivy down there." (Tr., pg. 51)
Hughes was aware, by his prior contract with plaintiffs, of the commission customarily charged by the plaintiffs even if it did not specifically come up in his disputed office conversation with Steve Dickerson.

PROCURING CAUSE
Finding that an oral contract existed between the parties, we move to the next contention of plaintiffs that they should be entitled to recover their commission under the jurisprudentially recognized theory of a broker being a "procuring cause" of a sale. ". . . A real estate broker is considered the procuring cause of a sale and is entitled to a commission if he brings the parties together, even though the parties conduct the final negotiations themselves and even though the broker does not have a listing or an exclusive-agency agreement." Slimer v. White, 275 So.2d 468 (La.App. 2 Cir. 1973) citations omitted. See also Sleet v. Williams, 291 So.2d 495 (La.App. 3 Cir. 1974).
*1304 Jim Dickerson, Wayne Ivy, and defendant all testified that Dickerson introduced Ivy to Hughes as he knew Ivy was a recent arrival in the area and was looking for a home to purchase:
Mr. Ivy: "He contacted me and said he had a house and showed it to me . . .
Q. Now, was Mr. Dickerson the first one to contact you about this house?
A. Yes, he was." (Tr., pg. 41)
* * * * * *
Mr. Hughes: Q. "Prior to this time, were you aware that Mr. Ivy wanted to purchase your house?
A. No, sir." (Tr., pg. 51)
Defendant objects that after the initial viewing of the property on Sunday, February 26, that Dickerson did nothing to further the sale, and that there would not have been a sale had not Hughes personally called upon Ivy. This impression apparently comes from a conversation that Hughes had with the Dickersons at the "Cotton Patch" in Coushatta approximately one week after the initial contact. Hughes testified that Jim Dickerson told him that Ivy was not interested in his property. Dickerson denies this, stating that he only told Hughes that Ivy had not made up his mind yet. It was after this conversation that Hughes called on Ivy and eventually sold him the property slightly more than one month after the initial viewing.
Defendant argues that Ivy had broken off the original negotiations through Dickerson and that as Dickerson had nothing to do with the subsequent negotiations, he is not entitled to a commission. The cases defendant cites for this proposition are factually distinguishable from the present circumstances. They hold that no commission is owed when:
(1) there is no contract between the seller and the broker;[2] or
(2) the broker is not a direct influence (procuring cause) of the sale;[3] or
(3) negotiations had ceased or been abandoned, only to be renewed later, long after the broker had tried and failed to effect a sale.[4]
The facts here show that Mr. Ivy was immediately interested in the property, that Dickerson contacted him again after the initial viewing, and that Ivy never became disinterested but did take time to consider the situation before deciding. Hughes dissuaded Ivy from calling Dickerson again telling him that Dickerson Real Estate had no listing on the property and that he should deal directly with him.
Mr. Hughes: Q. "During those negotiations did you ever contact Mr. Dickerson to come sit in and help you?
A. No sir." (Tr., pg. 51)
Under Louisiana law, a real estate broker is considered the procuring cause of the sale and is entitled to a commission if he brings the parties together, even though the parties conduct the final negotiations themselves, and even though the broker does not have a listing or exclusive agency agreement. Slimer v. White, supra; Keating v. Lachney, 216 So.2d 906 (La.App. 1 Cir. 1968). Here, no long period of time had elapsed nor had Mr. Ivy broken off negotiations. It was approximately one month after the initial contact between Ivy and Hughes (arranged by plaintiff) that the sale was made. It is obvious that plaintiff set in motion the events and was in fact the procuring cause of the sale. The fact that the final negotiations were made by the individuals without the aid (or even the knowledge) of the real estate agent cannot negate the efforts he has put forth. Saturn Realty Co. v. Muller, 196 So.2d 321 (La.App. 4 Cir. 1967); Veters v. Krushevski, 100 So.2d 93 (La.App.Orl.Cir.1958), writ denied. All that a real estate agent has to sell is his *1305 services; if parties once introduced by this service were free to go around the agent and avoid paying him a reasonable commission, he would not long economically survive.
In accordance with the foregoing, we conclude that the holding of the trial judge was clearly erroneous and should be reversed. Accordingly, it is ordered, adjudged and decreed that there be judgment herein in favor of James A. Dickerson and James S. Dickerson, d/b/a Dickerson Real Estate Company, plaintiffs, and against L. D. Hughes, defendant, for the amount of $3,300 (6% of $55,000) plus legal interest thereon from April 6, 1978[5] until paid.
Costs of the trial court and of this appeal are assessed against the defendant, L. D. Hughes.
REVERSED AND RENDERED.
NOTES
[1] Art. 2277. Proof of agreements concerning movables or money.

"Art. 2277. All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
[2] U. S. Realty Sales of Shreveport v. Rhodes, 34 So.2d 523 (La.App. 2 Cir. 1948); Rosenthal v. Cangelosi, 164 So. 502 (La.App. 1 Cir. 1935).
[3] Crasto v. Pohlman, 12 La.App. 685, 127 So. 89 (1930); Rosenblath v. Brumfield, 15 So.2d 474 (La.App. 2 Cir. 1943).
[4] Ford v. Shaffer, 143 La. 635, 79 So. 172 (1918); Cobb v. Saucier, 30 So.2d 784 (La.App. 2 Cir. 1947).
[5] April 6 is the date of the sale.