GULOTTA, Judge.
In this action by a yacht broker for a commission on the sale of a vessel, plaintiff appeals from a judgment dismissing his suit after a trial on the merits. Because we conclude the trial judge erred as a matter of law in concluding that no commission was due even though the broker was the procuring cause of the sale, we reverse and set aside the trial court’s judgment and award plaintiff 10% of the sale price.
Defendant Jay Botsay of Chalmette, Louisiana desired to sell his 36 foot Harter-as Sports Fisherman vessel located at the Gulf Outlet Marina in Louisiana. Botsay posted pictures of the vessel in several marinas in the area and placed an ad in the New Orleans Times Picayune on September 14, 1980.
Botsay had recently purchased the vessel for $43,000 in August, 1980, through the services of plaintiff, William A. Good, a yacht broker. According to Good’s version of the events, Botsay contacted him again for Jielp in selling the boat, and they agreed on an asking price of $49,000.00 based on boating industry values, subject to a 10% commission on the sale price. Good testified he told Botsay that he would advertise the boat for sale in Mobile, Alabama.
Good further testified that on Friday, November 14, 1980, he contacted a fellow broker, Bryson Hollowell, in Mobile, Alabama and agreed to split the commission with him if they obtained a buyer. Hollo-well ádvertised the vessel for sale in the Mobile Press Register on Saturday and Sunday, November 15-16, 1980. In response to the Mobile newspaper ad, Albert F. Johnson of Bayou La Batre, Alabama, telephoned Hollowell who in turn gave him Good’s telephone number in New Orleans.
According to Good, he quoted Johnson a price of $49,000.00, set up an appointment for him to come to New Orleans to view the vessel, and gave him instructions on how to get to the marina. Good further testified that Johnson had told him he would be coming to St. Bernard Parish and would call him if still interested after viewing the vessel. Good told Johnson he was on “standby” and would be glad to show him the vessel. The broker further testified that he instructed the owner Botsay how to make the boat presentable to a client and advised him that he had “a person from Mobile” to see the vessel. Good heard nothing further from Johnson, and subsequently learned that Botsay had sold the vessel to Johnson for $43,000.00 sometime later in November, 1980.
Good’s testimony was largely, corroborated by his fellow broker, Hollowell, and the ultimate purchaser, Johnson. Johnson could not recall if a sale price was quoted on the phone, however, and testified that Good had given him Botsay’s phone number.
In contrast to Good’s version of the events, Botsay denied entering into any agreements with Good or any other yacht broker concerning the sale of the vessel. *1171 According to Botsay, he was working on the boat at the marina, when Johnson walked up to the pier and started looking at the vessel without mentioning he was from Mobile, had previously talked to Good, or had seen the Alabama newspaper ad. Botsay testified that Johnson offered $43,000.00 for the vessel, and they consummated the sale.
In written “Reasons for Judgment”, the trial judge concluded that Botsay had contacted Good as a yacht broker to obtain a buyer for his vessel and that Good had procured Johnson as a prospect. The trial court further concluded, however, that the brokerage agreement between the parties was non-exclusive and without a specific term, and that Good was to receive the usual yacht brokerage commission of 10% on any amount above $43,000.00 provided he procured a willing buyer and concluded a sale netting at least that amount to Bot-say. The trial judge further held that Good “did not take any steps to negotiate price or to otherwise protect his commission” and that his suit “must be dismissed” because he had not concluded a sale entitling him to retain any excess above the net proceeds to Botsay.
A broker is entitled to an agreed commission when he is the procuring cause in bringing about the sale. McLeod v. L. & L. Oil Company, 147 So.2d 241 (La.App. 4th Cir.1962); Saturn Realty, Inc. v. Muller, 196 So.2d 321 (La.App. 4th Cir.1967). The broker is considered the procuring cause of sale if he brings the parties together, even though the parties conduct the final negotiations themselves and the broker does not have an exclusive-agency agreement. Dickerson v. Hughes, 370 So.2d 1301 (La.App. 3rd Cir.1979); Slimer v. White, 275 So.2d 468 (La.App. 2nd Cir.1973).
Applying these principles to the instant case, we, like the trial judge, conclude the evidence preponderates in plaintiffs favor as the procuring cause of the sale. Through Good’s efforts in advertising in the Mobile newspaper, Johnson learned that the boat was for sale. Good gave Johnson instructions for seeing the boat at the marina and informed him that he was on “standby” for further dealings with him if he was still interested after seeing the vessel on his own. Good further testified that he had informed Botsay that he was advertising the boat for sale in Mobile and had “a person” to view the vessel. On the other hand, Botsay denied that Good told him that he was sending “Johnson” to see the boat. When we consider that Good told Botsay that he was advertising the boat for sale in Mobile and that he was sending someone from there to see the boat, we are led to conclude that, as a procuring agent, Good was prevented from protecting his commission by Botsay’s sale of the vessel to Johnson and withholding of this information from the broker. Because Good set in motion the events that led to the sale, his failure to participate in the later negotiations between Botsay and Johnson in his absence does not prevent him from obtaining a commission.
Although the trial court properly characterized Good as the procuring cause in bringing about the sale of the vessel, the trial judge was clearly wrong in finding that plaintiffs commission was to be calculated on a sale price above $43,000.00 net to Botsay. The trial judge’s interpretation of the commission agreement is contrary to the undisputed evidence.
Because Botsay denied entering into any agreement with Good or any other broker for sale of the vessel, plaintiff was the sole witness testifying about the commission structure. Good responded as follows on this issue:
“Q Did you discuss with him a commission?
A I’m very sure that Mr. Botsay actually, Mr. Botsay indicated to me what figure he wanted and the figure I quoted was about the figure he would take net. Myself, I take my commission over and above that figure.
Q What figure was the total sale’s price?
*1172 A Forty-nine thousand dollars I told him I would ask for the vessel.”
Although this testimony seems to support the trial judge’s interpretation, Good’s subsequent testimony amplifies the agreement. After repeatedly testifying that 10% of the purchase price is the standard broker’s commission in the industry, Good responded to further questioning as follows:
“Q Mr. Good, excuse me. From what you’re telling me, had the boat been sold by you to your client at your asking price, even after paying you ten percent, what Mr. Botsay would have realized was at least $43,000, is that correct? A If I would have sold it to my client at forty-nine, I presume the ten precent over that would be $43,000. Now, there’s also a chance, Mr. Perez, which it did not happen, I could have gotten an offer of $46,000, maybe forty-seven. I don’t know. I didn’t have the opportunity to do it, but at that time whatever offer I would have wrote up on my contract, then I would have presented it to Mr. Botsay and if anything would have been accepted by Mr. Botsay, presume it was forty-five, even at forty-five thousand there would have been a ten percent commission due on what he would have accepted.”
Considering this testimony in its entirety, we conclude the only reasonable inference is that Good was entitled to a 10% commission on the gross price of any sale between his client Botsay and a buyer procured through Good’s efforts as a broker, whether or not Botsay netted $43,000.00. It is clear that an asking price of $49,000.00 to permit Botsay to net an amount in excess of $43,000.00 from the sale was simply a desired result or target price based upon Good’s assessment of market conditions in the yachting industry. Good’s testimony, when properly interpreted, clearly means the broker was entitled to a straight 10% on the gross sale price; it does not support a conclusion that his commission was only to be figured on amounts above $43,000.00. Moreover, because Botsay and Johnson, inadvertently or otherwise, bypassed negotiations with Good, the broker was never given an opportunity to use his professional expertise and salesmanship to attempt to negotiate a higher sale price for his client, perhaps one in excess of $43,000.00. We therefore conclude the trial judge erred in concluding Good was not entitled to his commission on this $43,000.00 sale.
In so holding, we distinguish McLeod v. L. & L. Oil Company, supra, and Weaver v. Louisiana Real Estate & Devel. Co., 404 So.2d 1280 (La.App. 2nd Cir.1981), cited by the trial judge.
In McLeod, unlike the instant case, a plaintiff-broker failed to prove that he was the procuring cause in bringing the parties together on common terms. In McLeod, the buyer himself had independently contacted the seller concerning a tug boat for sale, and the broker’s efforts in mailing photographs of a different vessel, a barge, to the buyer had not brought the parties together for the ultimate transaction. The situation in McLeod is far different from the facts in the instant case where Good’s advertising efforts in Mobile resulted in an interested buyer.
In Weaver, supra, a broker was not entitled to a commission where the contract contemplated a promotion of a specific real estate project and the evidence reflected that the project was neither developed as specified nor sold at the minimum price under the contract provisions to ensure the defendant’s profit and the plaintiff’s commission. In Weaver, the commission was dependent on the following language: “if this project can be put together and sold” for a specified sum of money. The broker in Weaver simply did not comply with the terms of the agreement; his efforts in the promotion of another project could not be considered as performance under the particular contract at issue. In the instant case, unlike Weaver, plaintiff Good was the procuring cause of the sale of Botsay’s vessel and is clearly entitled to his 10% commission.
Accordingly, the judgment dismissing plaintiff’s suit is reversed and set aside. Judgment is now rendered in favor of *1173 plaintiff William A. Good, d/b/a Bill Good Yacht Sales and against Jay Botsay in the sum of $4,300.00, together with interest and costs.
REVERSED AND SET ASIDE; RENDERED.
REDMANN, C.J., dissents with reasons.